WILLIAM BROWN, Plaintiff in Error,

*vs.*

PHILARMON PRATT, DELANDO PRATT, CHARLES J. WOOD, Defendants in Error.

ERROR TO COLUMBIA CIRCUIT COURT.

In order to constitute a valid levy upon personal property, the sheriff or officer must be within view of the property and have it under his control.

Where an officer attempted to levy upon a quantity of saw logs which were, some in mill ponds covered with ice, and others in different places in a river for the distance of a mile or more, and attempted to sell the same in the same situation, and purporting to designate the logs levied upon and sold by certain marks thereon, without taking actual possession and control; *Held*, that there was no valid levy or sale, and that the purchaser acquired no title thereby.

In such case, though a valid levy and sale may have been made of some of the logs, yet in action of trespass or trover by the purchaser for the taking or conversion of the logs, it is necessary for him to identify the property which was properly levied upon and sold.

THIS was an action of trover, commenced by the plaintiff in error against the defendants in error, for converting to their own use a quantity of saw logs, the property of the plaintiff.

The declaration was in the usual form, to which the defendants pleaded the general issue, and also a special plea, to wit: that the defendants Philarmon Pratt and the said Wood had been sued before one D. K. Noyes, a justice of the peace, for the same subject matter, in which suit judgment had been rendered against them, which judgment is in full force and effect. To this plea the plaintiff replied another wrong, &c.

The cause was tried at the March term, 1855, of the Columbia circuit.

On the trial the plaintiff, to show title in himself, proved by record evidence that at the September term of the Sauk Circuit Court, 1849, Chancey Brown and William Brown, adminstrators of the estate of George W. Brown, deceased, as plaintiffs, recovered a judgment against Philarmon Pratt for the sum of $539.36, damages and costs of suit, reduced by payment of $191.49.

The plaintiff next offered in evidence a certified copy of an execution issued upon such judgment, together with the sheriff's return thereon, which was admitted. The return of the sheriff was, that by virtue, &c., I seized, * * " also all pine logs in the Barraboo River, from Pratt's mill up the said river to the 'drive' in Crossman and Metcalf's mill pond, marked B. P. and W., and W. F. J., three cows, one pair of horse blankets, and two surcingles; and the same day I advertised by posting in three of the most public places in Brooklyn, that said property would be sold on, &c., * * and on. the day of, &c., I sold at public vendue the said logs, in several lots, to William Brown, for $30; also, the three cows," &c., &c.

The plaintiff then produced the docket of D. K. Noyes late a justice of the peace, and called the said Noyes as a witness to identify the same. The plaintiff then offered in evidence a judgment entered on said docket in a suit wherein the same persons as in this suit were then plaintiff, and Philarmon Pratt and Charles J. Wood were defendants therein; and also offered to prove what questions were passed upon in the said suit before Justice Noyes, for the purpose of showing that the title to the property now in controversy " had been passed upon by way of a decision in relation to other logs, the title to which was denied in the same way," and with a view to estop the defendants from again contesting the matters, or title so decided; which offer was objected to, but admitted by the court, and the defendants excepted.

From the transcript it appeared that in a suit of William Brown against Philarmon Pratt and Charles J. Wood, before the said Noyes, commenced on the 29th of May, 1850, and adjourned until 22d day of July, 1850, the plaintiff declared in one count in trespass *de bonis* for taking, carrying away, &c., one thousand pine logs, of the marks some W., some P. & B., and some W. F. J., of the value, &c.; and in another count in trover for the conversion of saw logs with like marks and of like value. Much evidence appeared, from the minutes of the justice, to have been introduced before him, whose finding thereon after the hearing thereof, was: " It appearing therefrom that some 300 logs were removed down into the boom of Pratts, which were on the rapids at one time after they were sold to the plaintiff, of which one-

half or thereabouts, were sold to the plaintiff; at another time one hundred and fifty logs were moved into the boom, nearly one-half of which were then sold. And it appearing that they were worth $4.00 per 1,000, and that some four or five logs would make a thousand feet of lumber, the plaintiff waiving all over $100, which was proved, judgment is hereby rendered for the plaintiff, and against the defendant for the sum of one hundred dollars damages, and costs taxed at nine dollars and one cent."

This judgment was appealed to the County Court and the venue afterwards changed to the Circuit Court, and as the whole case turns upon the correctness of the judgment of peremptory non-suit rendered by the latter court, the proceedings therein cannot be much abbreviated.

The plaintiff then gave in evidence a certified copy of the record of proceedings in the same case, in the County Court for the county of Sauk, showing the appeal of said cause, the amending of the declaration on motion of the plaintiff, so as to claim five hundred instead of one hundred dollars damages, and a change of venue from Sauk to Columbia County Court. It was conceded and admitted by the counsel for both parties, that the same cause was afterward tried in the County Court for the county of Columbia, which resulted in a judgment of nonsuit against the plaintiff. And that the said cause was afterward removed to the Supreme Court on writ of error, and the judgment of the County Court reversed, upon the ground that there was no appeal, on account of defects in the affidavit for appeal. Said appeal was afterwards dismissed and certified back to the Justice's Court, accordingly. Whereupon the examination of D. K. Noyes, the witness before mentioned, was resumed, and the plaintiff proposed a question as follows, to wit: Do you recollect what was in testimony before you on the said trial? Which was objected to by the defendant, on the ground that it was not competent to show what was testified to on that trial. The objection was overruled by the court, and the question allowed to be asked. The witness answered—I do not recollect all the testimony. I have the minutes that I took down at that trial. The plaintiff's counsel then asked of said witness the following question: What was the defence set up by the defendants on that trial? Which was objected to by the defendants'

counsel, on the ground that the record was the only evidence of what was decided. The objection was overruled by the court. The witness answered that the only defence made was, that they claimed a sale of those logs to Charles L. Wood. They claimed that the sale was made prior to the sale under which Brown claimed title. I came to the conclusion that the sale to Wood was not made out, and so decided. The plaintiff's counsel then proposed the following question, to wit: State whether the execution in the original cause through which Brown claimed title was read in evidence before you on that trial? Which was objected to by the defendants' counsel. The objection was overruled by the court. The witness answered, I think it was Brown claimed title on the trial under a sheriff's sale on an execution, being the same before mentioned. The plaintiff was required to prove his case on that trial. Said witness testified on his cross-examination as follows: I am not positive, but I think the execution was read. The plaintiff proved by sheriff Dunlap, the levy and sale. The defendants' counsel then asked the following question: Was the validity of the levy and sale on said execution to Brown, litigated by the defendants on that trial? to which the plaintiff's counsel objected, on the ground that it was a question of law, which objection was overruled by the court, and the question allowed to be asked. The ruling and decision of the court in that respect was excepted to by the plaintiff by his counsel then and there. The witness answered: The only defence interposed was the sale from Pratt to Wood. The testimony of the defendants was to this point. In referring to my minutes, I do not find that the execution in question was read in evidence, if it was, I have not made a minute of it. In looking at the minutes my memory is not refreshed, so that I can testify from recollection about the execution. I do not recollect whether the judgment or the execution before mentioned was read in evidence on that trial.

When the plaintiff's counsel resumed the examination of the witness, he testified to the following, after a question asked by the counsel, to wit: Did the defendants on that trial admit the title of the plaintiff, or did he have to prove it? Which was objected to by the defendant's counsel, and the objection overruled by the court, and the question allowed to be asked. The

witness answered—the plaintiff proved it, there was no admission to my recollection. The plaintiff claimed the title under the sale from the sheriff, Dunlap. I decided the question in the plaintiff's favor.

The plaintiff's counsel then gave in evidence the minutes of evidence taken by the said Justice Noyes, on the trial of this cause before him, by which the facts contained in the said offer of the plaintiff were proved.

· The sheriff, who it was alleged, levied on the logs, and sold them on execution, under which sale the plaintiffs claim title, was produced by the plaintiff, and testified that he made a levy by virtue of an execution in favor of Chancey and William Brown, administrators, against Philarmon Pratt and Wood, on pine saw logs lying in the Baraboo River, in Sauk county; some were in Pratt's mill pond; some were above in Crossman and Metcalf's mill pond. The logs were marked B. P. W. and W. F. J. He meant to levy on the logs so marked, and sold them on the said execution, to William Brown, the plaintiff in this suit. The logs were in the river at the places mentioned, when he sold them. They were in the same position as when levied upon. They were sold in three lots. It was impossible to tell the number of them; sold all the logs having those marks. When he made the levy, he supposed there were about one thousand logs in the river of all kinds and marks.

On cross-examination, the witness further testified as follows: over. The logs were frozen in. Some of them were altogether

I levied on the logs in December, 1849. The river was frozen under the ice, and some were a little out. Some of them were above the ice, so I could see the marks. I saw the marks on about twenty-five in the pond. There were other logs there— some of them were covered with snow. Could not see the marks on any in Pratt's pond, without poking it away. The logs lay in bodies mainly, some were scattered along. I examined some of the logs that were in the rapids, could not get on all of them. I saw the marks on some fifty, on the rapids. Some I saw no marks on. The logs in Moore's pond were in the same condition, as those in Pratt's pond. Those that were under the ice, I could not see the marks on. I scraped the snow off enough to see the different marks.—I undertook to count the logs, but

it was impossible to do it. I do not recollect how the logs were marked, whether on the sides or ends. I saw about ten logs in Moore's pond with those marks. There were a few logs in Crossman and Metcalf's mill pond, in the same situation. It was impossible to count them, except those on the rapids. I saw about fifteen with the marks on, in Crossman and Metcalf's mill pond. As to the balance of the logs, they were in a situation that no one could identify them. At the time I made the levy, I undertook to count the logs, but could not. The logs were in the same situation, when sold; some of them were covered up more. It is one mile and a half from Pratt's to Metcalf and Crossman's pond. I levied on all the logs that were marked as above described, not alone on those I could see, but all in view having those marks. I don't recollect how many different lots I sold them in. I think all from Pratt's to Moore's pond were sold in one lot. It is about one mile between those ponds. At the time of the sale I did not go down on the ice, to see the logs. I saw some on the rapids with the marks. Some of the bidders went down to see the logs at the time of the sale. When I sold the first lot, I sold on the bank of the river, nearly a mile from Pratt's dam. From where I sold, I don't think I could see Pratt's pond. I should think there were five hundred logs in all, in the river, between Pratt's and Moore's dams. I cried off all the logs that had those marks on. I could not tell how many of those logs were in Moore's pond. I next sold all the logs between Moore's and Crossman and Metcalf's dam; they being about a half of a mile a part. I could not see from one dam to the other. I sold the logs in the same way. I did not testify before Esqr. Noyes about the manner of this sale. I was not asked about it.

The witness further testified on re-examination as follows: I went along up the river as I went to sell—we followed the river.

The evidence being closed, the defendants, by their counsel, moved the court for a nonsuit, on the ground, first, that the plaintiff has not shown that Philarmon Pratt owned the logs that were sold on that execution by the sheriff and bought in by William Brown. 2d. Because Brown acquired no title by virtue of that levy and sale, to the logs in controversy. 3d.

That it is shown by the proof that a former recovery was had for all the logs he acquired title to under that sale, if he acquired any title. 4th. Because there has been a former recovery for those same logs; which motion was granted by the court, and the plaintiffs excepted.

*Knowlton & Knapp*, for the plaintiff in error.

*D. J. Pulling*, for the defendant in error.

*By the Court*, WHITON, C. J. We think that the nonsuit was right, and that the judgment of the court below must be affirmed.

The plaintiff was obliged to show title to the logs, and this he sought to do only by means of the sale on the execution. In this we are of opinion he failed, as the facts fail to show that any sufficient levy was made upon them.

In order to constitute a valid levy, the sheriff must be within view of the property and have it under his control. *Ray vs. Harcourt*, 19 *Wend. R.* 495; *Van Wyck vs. Pine*, 2 *Hill's R.* 666.

The facts in this case show that the logs were not all in view of the officer, and that some of them were under the ice with which the mill pond was covered. Many of them were in such a situation that they could not be identified, nor even counted.

It is probable that a valid levy was made on some of the logs, but as they were not together but were "scattered along" the stream in detached parcels for a mile and a half, a valid levy upon those which the sheriff saw, and had in his power, would not affect those which were not thus situated. Admitting that the sheriff made a valid levy upon some of the logs which he sold to the plaintiff on the execution, still the plaintiff's proof was defective for the reason that it did not show that any of them which were the subject of this suit were thus levied upon. The jury (if the case had been submitted to them) could not have determined from the testimony, that any particular one of the logs belonged to the plaintiff. In actions of this nature, it is of course necessary for the plaintiff to show that he is entitled to the possession of the particular property which is the subject of the suit, or of some part of it which he can identify, or he cannot recover. Again, it appears from the testimony, that a

suit was brought by the plaintiff before a justice of the peace against two of the defendants for the conversion by them of a part of the logs which were sold by the sheriff to the plaintiff, and that the action resulted in a judgment in favor of the plaintiff. The logs which were the subject of that suit may have been those upon which a valid levy was made by the sheriff. If so, then the plaintiff's title to those would be good, while as to the remainder it would be worthless.

The only point in the case which creates any difficulty, arises upon the proof which was introduced at the trial to show that the question as to the ownership of the logs had been determined in a previous suit between the present plaintiff and two of the defendants. It is insisted by the plaintiff in error that the proceedings before D. K. Noyes, a justice of the peace, which were proved at the trial, show conclusively that the logs in question are the property of the plaintiff. The action which was tried before the justice was an action of trover for some of the logs which were sold by the sheriff on the execution, and was brought by the present plaintiff against two of the present defendants, viz: Philarmon Pratt and Charles L. Wood. The suit resulted in a judgment in favor of the plaintiff. Without noticing the fact that one of the defendants in the present suit was not a party to the former one and does not appear in the position of a privy, we think that the proceedings before the justice do not preclude the defendants from contesting the plaintiff's title to the property in this action. In the case of *Doty vs. Brown* (4 *Comstock R.* 71), the Court of Appeals of New York decided that when the question of fraud in the sale of property had been decided by a justice of the peace, the decision was conclusive as to all the property included in the sale, although the action before the justice was brought to determine the rights of the parties in regard to a portion of it only. The court held that as the justice had decided that the sale of the property was fraudulent and void, the decision was conclusive as to the property included in the sale.

This case appears to have gone as far in favor of the doctrine contended for by the plaintiff in error, as any to be found in the books. *See* 3 *East R.* 346; *Adams vs. Barnes*, 17 *Mass. R.* 368. We are not disposed to controvert the decision, but we do not

think that the case before us falls within the principle decided by the court. Admitting that the justice decided that the plaintiff's title to the logs derived from the sale on the execution, was valid, there is nothing in the testimony to show that the justice decided the question as to the ownership of the logs which are the subject of this suit. We have stated that probably the sheriff made a valid levy upon a portion of the logs; if so, the title of the plaintiff may be perfect as to part of them and worthless as to the remainder. It cannot be determined from the testimony what particular logs were the subject of controversy before the justice, and for that reason we cannot decide that the question of the title of the plaintiff to the property, has been judicially determined.

In the case of *Doty vs. Brown,* before referred to, the entire property in controversy in both suits was the subject of the sale, and that having been determined to be fraudulent and void by a court of competent jurisdiction, the decision was held conclusive as to the entire property. But in this case we have nothing to show that the plaintiff's title to the property has been before the subject of controversy.

Judgment affirmed.