TRI-CITY ELECTRIC SERVICE COMPANY ET AL.
*v.* JARVIS ET AL.

[No. 25,387.   Filed March 28, 1933.   Rehearing denied
January 2, 1934.]

*William J. Whinery, Otto J. Bruce, J. B. Walters, M. Clyde Brown* and *Bertram C. Jenkines,* for appellants.

*Frederick C. Crumpacker, Edwin H. Friedrick, J. E. Darlington, Bernard A. Petrie,* and *Tinkham & Galvin,* for appellees.

TREANOR, C. J.—Appellee, Almira Jarvis, brought suit in the Lake Circuit Court as a minority stockholder in the Tri-City Electric Service Company, a corporation, praying for an accounting to said corporation by appellants, Leon J. Granger and Emma J. Granger for certain property alleged to belong to the corporation and held by said Grangers; that appellant Emma J. Granger be decreed to be constructive trustee of certain real estate and that the Grangers be decreed to execute their deed conveying the property to the company and be enjoined from transferring or otherwise disposing of such property; that a receiver be appointed to take charge of and manage the corporation and that the appellant, Leon J. Granger, be enjoined from acting in any trust capacity in the management of the corporation.

Appellant's separate and several demurrers were overruled and the issue was joined by an answer in

general denial. Trial was begun on May 18, 1922, before Special Judge Frank B. Pattee and on June 21, 1924, the court made, filed, and entered its special finding of facts and stated conclusions of law thereon, to which conclusions appellants excepted and at the same time filed their motion for a new trial, motion in arrest of judgment, and motion for *venire de novo,* which motions were overruled and final judgment and decree entered. On the same day, June 21, 1924, appellants prayed for a term time appeal, which was granted and on June 26th they filed their appeal bond, which was approved by the court. On July 2nd, during the same term of court, upon its own motion the court vacated its fifth conclusion of law and so much of the decree as was based thereon and restated its fifth conclusion of law and that part of the decree based thereon.

Appellants' assignment of errors contains 18 assignments which, in appellants' brief, are grouped under 5 points. They may be summarized as follows:

1. The court erred in overruling appellants' demurrer to the complaint.

2. The court erred in overruling appellants' motion for a new trial.

3. The court erred in overruling appellants' motion for a *venire de novo.*

4. The court erred in each of its conclusions of law upon the special findings of facts.

5. The court erred in vacating its 5th conclusion of law after judgment had been entered and restating its 5th conclusion of law.

Appellants' demurrer to the complaint was upon the grounds that (1) the amended complaint did not state facts sufficient to constitute a cause of action and (2) there is a defect of parties in that it appears by the complaint that M. H. Wolf is a stockholder of the cor-

poration but is not a party plaintiff and has not been made a party defendant.

In support of the first ground of demurrer, appellants urge in their brief that "the general rule of law is, that neither a stockholder nor any number of stockholders, have the right to sue in their own names, or to use the corporate name, for the prosecution of an action at law, or in equity, on account of any right of action which may exist in favor of the corporation" (p. 285 of appellants' brief), citing authority in support of that proposition, and also, that "the amended complaint in the instant case states no cause of action upon any theory whatever in favor of the Tri-City Electric Service Company, appellant; and, this being a suit brought by appellee, Jarvis, on the theory of a minority stockholder, suing for and on behalf of the corporation, the complaint is insufficient for any purpose or upon any theory whatsoever." Appellants further contend that the amended complaint wholly fails to state any cause of action in favor of the Tri-City Electric Service Company, as against the appellant, Emma J. Granger.

The amended complaint alleges, in substance, that the appellant corporation was organized in 1913 and was engaged in the electric contracting business; that its capital stock is $10,000.00 divided into 100 shares of $100.00 each; that plaintiff is and has been the owner of 30 shares since 1915, and that Leon J. Granger, who is president and managing director, owns approximately 50 shares and that there is no other stock outstanding except one share held by M. J. Wolf, secretary of the company, which share was issued to M. J. Wolf by Leon J. Granger to enable said Wolf to qualify and act as an officer of the corporation; that the plaintiff brings this action as a minority stockholder on behalf of herself and the defendant corporation and all

other stockholders singularly with plaintiff; that ever since its incorporation Leon J. Granger has owned a majority of the stock of the corporation and has conducted all its business affairs, made all contracts, received all moneys, and decided all policies of the corporation and is in entire control of all its property and assets; that the first stockholders' meeting was held on May 19, 1913, and no subsequent meetings of directors or stockholders were held until April 26, 1920; that the defendant, Leon J. Granger, has fraudulently and wrongfully misappropriated and converted to his own use and benefit the assets and earnings of the corporation amounting to in excess of $30,000.00; that prior to the year 1915 plaintiff and defendant, who are brother and sister, and plaintiff's husband agreed that the corporation should buy a lot and erect a building thereon for the use of the corporation; that title to the lot should be taken in the names of the plaintiff and the defendant, ·Emma J. Granger, wife of Leon J. Granger, jointly as trustees for the corporation, the details of the purchase being left to Leon J. Granger; that in violation of such agreement and in breach of his duties of trust as stockholder and corporate officer, Leon J. Granger in 1915 procured a deed conveying the property to Emma J. Granger personally and thereafter erected a building on the lot; that the purchase price of the lot was approximately $2,800.00 and that the building cost approximately $8,000.00, both of which were paid out of the money and property of the corporation; that the defendant, Leon J. Granger, paid himself and wife $75.00 per month out of the corporation as rentals for the property; that the foregoing acts have been carried on by him as part of a general scheme to fraudulently and wrongfully manage the corporation for his own exclusive use and benefit. The complaint further recites other instances of alleged misuse of property

and money of the corporation by the defendants in acquiring real estate to be held in the name of Emma J. Granger for the private use and benefit of the Grangers and alleges that the books and accounts of the corporation have been exclusively in the control of the defendant; that an examination of them will disclose other fraudulent and wrongful transactions carried on by him; that an accounting is necessary to determine the exact amount that the Grangers owe the corporation by reason of the alleged misappropriations; that plaintiff has received not more than $700.00 in the form of advancements from the defendant but that no dividends have ever been declared or paid upon her stock, that the corporation's net profits from its organization in 1913 to December 31, 1919, were approximately $28,000.00, that by reason of the fact that the corporation is exclusively within the control of the defendant, Granger, and because of his wrongful schemes and designs it is futile for plaintiff to make any demands on the corporation to commence this or any action against the defendants; that plaintiff has never acquiesced in any of defendants' acts or purposes and that plaintiff has no redress to correct the acts complained of through the corporate management and is without any plain, adequate, certain, and speedy remedy at law. That as a result of said fraudulent and unlawful acts, schemes, and designs of the defendant, Leon J. Granger, plaintiff has been and is deprived of the use of her investment in the corporation; that her stock holding is impaired in value and if the control of the company remains in Granger she believes there will be further unlawful and fraudulent acts of misappropriation and diversion which will entirely destroy and render worthless her stock; that in order to protect her as a minority stockholder and her investment, it is necessary that a receiver be appointed to

take charge of the company and its assets and to protect the plaintiff and her investment from substantial loss.

Appellee's supplemental complaint alleges that the appellant, Leon J. Granger, has withdrawn and taken from the company, $2,800.00 in money, merchandise, and other items in addition to his salary; that since the commencement of this action he has continued in his refusal to issue dividends upon the stock of the company notwithstanding during said period said company has had a large and prosperous business; that its net profits from operations for a period from the beginning of the company in 1913, to December 31, 1920, was approximately $52,000.00; that the net profits and surplus are fully sufficient to justify and require that dividends be issued upon the stock of the company; that Leon J. Granger continues to refuse and decline to permit the issuing of dividends as part of his scheme and design to deprive the plaintiff of the use and benefit of her investment in said company, for his own exclusive profit.

Appellant's first ground of demurrer that the complaint does not allege facts sufficient to constitute a cause of action is not well taken. The facts alleged show: (1) that the appellee is a minority stockholder; (2) that appellant Leon J. Granger, in collusion with Emma J. Granger, had misappropriated assets of the corporation; (3) that property paid for out of the assets of the corporation had been fraudulently taken in the name of Emma J. Granger; (4) that Leon J. Granger, by reason of his control as a majority stockholder, had defrauded and is continuing to defraud the corporation to the loss of the corporation and the appellee; (5) that by reason of Leon J. Granger's control of the officers of the corporation it was impossible for the corporation to seek redress and that

appellee was the only stockholder who was willing to seek redress for the benefit of and in the name of the corporation. We think the complaint states a good cause of action against the defendants and in favor of the appellee suing as a minority stockholder on behalf of herself and the defendant corporation and all other stockholders singularly with the plaintiff. If the defendant Leon J. Granger has fraudulently misappropriated assets of the corporation, the corporation is entitled to have him account for the same; and if Emma J. Granger has aided in such misappropriation and has wrongfully received assets of the corporation she must account for same. The corporation's right against her is not affected by the fact that she is not a stockholder. Further, if Emma J. Granger wrongfully took and continues to hold title to property which to her knowledge was to be, and has been paid for with assets of the corporation, the corporation is entitled to have such property conveyed to it. The facts alleged clearly sustain the foregoing assumptions.

Appellants' second ground of demurrer is defect of parties. The complaint alleges that M. J. Wolf holds one share of stock issued to her to qualify her as director; "that she has no financial interest whatsoever in said share of stock, and in the capital stock of said corporation, and is and has been at all times, while holding the office of director of said corporation, in reality nothing more than a 'dummy director.'" The members of the court are not in agreement with the writer as to the correctness of the trial court's action in overruling appellants' separate and several demurrers for defect of parties. All members agree that there was no defect of parties as respects the principal action against the defendants, Emma J. and Leon J. Granger, since this action was to recover for injury to the corporation; but a majority of the

court believe that M. J. Wolf was a necessary party to the ancillary action to secure the appointment of a receiver for the corporation for the reason that she was a stockholder of record and as such had an interest in the management of the property of the corporation and should have had an opportunity to be heard, either as plaintiff or defendant. We all agree, however, that the entire cause need not be reversed since the record shows that the receiver was enjoined from acting by an order of the Appellate Court and did not at any time actually assume management of the prudential affairs of the corporation. Consequently any injurious consequences of the court's action in overruling the demurrer for defect of parties are cured by reversing that portion of the judgment which required the appointment of a receiver.

The findings are in harmony with the theory of the complaint and clearly within the issues raised by the complaint and the defendants' general denial. The findings are in substance as follows:

(1) That Leon J. Granger and the plaintiff, who owned all of the stock of the company with the exception of the qualifying share held by M. J. Wolf, decided that the corporation should purchase a lot and build thereon a suitable building for the needs of the corporation; and that the title to the lot should be taken in the names of the plaintiff and defendant, Emma J. Granger, who is the wife of the defendant, Leon J. Granger; "but that said property should be and become the property of the Tri-City Electric Service Company when so conveyed to said parties;" that in violation of this understanding title to the lot which was purchased was taken in the name of the defendant Emma J. Granger without the knowledge of the plaintiff.

(2) That part of the payments for the lot and building were made directly by defendants, Leon J. Granger

and Emma J. Granger; but that "none of the private funds of the said Emma J. Granger are invested in said real estate or the improvements thereon."

(3) That a balance of $2,384.00 due the contractor who built the building was paid out of the proceeds of a mortgage for $3,000.00 covering the real estate and improvements, which mortgage was executed by the defendants.

(4) That Leon J. Granger caused $6,825.00 to be paid to Emma J. Granger by the corporation as "rent"; and that Emma J. Granger collected $810.00 from a third person as rental for a part of the building; in short that the defendants wrongfully took $7,635.00 from the assets of the corporation and paid out on the original cost of the lot and building $3,978.00 from the assets of Leon J. Granger, leaving the defendants chargeable to the corporation in the sum of $3,657.00.

(5) That by reason of certain specific misappropriations the defendant Leon J. Granger was personally and individually "chargeable with and indebted to said defendant corporation" in the sum of $2,266.93.

(6) "That the defendant, Leon J. Granger, in his relations to said defendant corporation has been dishonest and unfair to said corporation, and that he is not a fit or suitable person to further act in the capacity of managing agent or directing head of said corporation, and that its business affairs cannot be entrusted to him further without involving said corporation in further financial loss, damage and injury at his hands; that he has theretofore converted the assets and property of said company to his own use and that of his co-defendant, Emma J. Granger, as heretofore set forth, in settled and selfish determination to further his own private interests to the prejudice of said corporation and to thereby prejudice the rights of the plaintiff as a

stockholder of said corporation; that by reason of said facts the management and control of said corporation should be taken from said defendant immediately, and transferred to a reliable manager; that said real estate in question is owned by said defendant corporation and not by the defendants Granger and Granger, or either of them; that it should be transferred by proper conveyance into the name of said corporation; that there are no persons among the officers or stockholders of said corporation, of whom there are only two with substantial interests, capable of acting officially in conducting and managing the business affairs of said corporation, that the plaintiff is not acquainted with said business and the defendant is unfit for the further conduct thereof for the reasons above given, and that by reason of said facts said corporation should be wound up, its property and assets sold and reduced to cash and the net proceeds distributed to the respective stockholders as their rights and interests may require."

(7) That the plaintiff was not guilty of laches in failing to discover that Leon J. Granger had not carried out the agreement relative to the securing of the premises in question; that she had reposed confidence in him and was led by his statements to believe that he had secured the premises for the corporation and had erected the building for the use and benefit of the corporation and was paying for the same out of the earnings of the corporation.

On the basis of the findings the court made the following conclusions of law:

(1) The court concludes, as a matter of law, that the defendants Leon J. Granger and Emma J. Granger should be required to account to the defendant, Tri-City Electric Service Company, a corporation, in the sum of $3,657.00 and that said corporation have judgment therefor.

(2) That the defendant Leon J. Granger should be required to account to the defendant Tri-City Electric Service Company in the sum of $2,266.93 additional, and that said corporation have judgment therefor.

(3) That the real estate and improvements thereon, described in finding No. 2, hereof, is owned by the defendant Tri-City Electrtic Service Company, and that the title thereto is held in fee simple in the name of said defendant Emma J. Granger, and that said defendant and her co-defendant Granger should be required to convey said real estate to said defendant Tri-City Electric Service Company, or upon failure or refusal by them to do, that the court should appoint a commissioner to make such conveyance, and that such commissioner should convey said property to said defendant Tri-City Electric Service Company.

(4) That the defendant Leon J. Granger is not a fit or suitable person to further act in the capacity of managing agent or directing head of said corporation, and should be immediately removed from such position and enjoined from interfering with the management and control of said corporation and its business affairs.

(5) That there is no officer or person fit or suitable to act in the capacity of managing agent or directing head of said corporation, and no person fit or suitable to further conduct its business and affairs, and that said condition of said corporation makes it necessary that a Receiver should be appointed to take charge of the business affairs of said defendant Tri-City Electric Service Company and to run and conduct its business temporarily and until such time as said corporation may possess some person or persons of responsibility capable of managing the business affairs of said corporation and that such Receiver should be authorized to run and operate said corporation until such event under the

control and direction of the Court. (This is the substituted 5th conclusion of law.)

We think that the trial court's findings force the conclusion of law that Emma J. Granger held title to the real estate in question as a constructive trustee for the corporation and that the property should be conveyed to the corporation. While it is true that an express trust in lands cannot be created by parol it is equally true that the law will raise a constructive trust to prevent fraud and to do justice when the facts justify it.

"But the test of diversion is not exhaustive. For most cases it may supply a working rule, but the rule is a phase or illustration of a principle still larger. A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty* v. *Guggenheim Exploration Co.* (1919), 225 N. Y. 380, 122 N. E. 378; *Moore* v. *Crawford* (1889), 130 U. S. 122, 128, 9 S. Ct. 447, 32 L. Ed. 878; *Perry on Trusts and Trustees*, 7th Ed., Vol. I, p. 309, §183a; Pomeroy's Eq. Jurisprudence, 3rd Ed., Vol. III, §1053.

It is true, as contended by appellants, that "a resulting trust, under section 2976, R. S. 1881 (now §13449, Burns Ann. Ind. St. 1926, §14741, Baldwin's Ind. Ann. Stat. 1934), must arise when the trustee takes title, and cannot be created by subsequent agreement, or by a subsequent use of the funds of the *cestui que* trust in satisfying unpaid installments of purchase money"; but it is settled conclusively that equity will create a constructive trust on the basis of use of funds after the "trustee" has acquired title to the property.

"An important difference between those two kinds of trusts (resulting and constructive) arising from the use of another's money is that a construc-

tive trust may arise from the use of the money after the property has been conveyed to the trustee but a resulting trust must arise, if at all, at the time the title is transferred." Perry (supra), p. 197, §127.

Assuming the correctness of the trial court's conclusion that the defendant Emma J. Granger held the real estate in trust for the corporation, it followed that the defendants were under a duty to account for all the funds which were diverted from the assets of the corporation to themselves, or received from third parties by them on the assumption that Emma J. Granger was the owner of the property.

"Therefore, courts of equity by raising a trust by construction in cases of fraud can do equal and complete justice between the parties. By this fiction of a constructive trust courts of equity have great powers. They can order the constructive trustee to hold the legal title for the original owner upon just and proper terms. If he has paid any value for the legal estate, they can order the estate to stand as security for it; they can order accounts to be taken and settled; they can decree a reconveyance of the property, or they can put an end to the trust by declaring the conveyances to be null and void, and order that they be surrendered up and cancelled. In all such cases the relief is really founded on fraud and not on constructive trust." Perry (supra), §166, p. 268.

We think the first three conclusions of law clearly follow and are supported by the findings. The fourth and fifth conclusions involve the difficult question of judicial interference with the prudential management of a solvent corporation by appointing a receiver. Since we have already indicated that the trial court's order appointing a receiver must be set aside it is not necessary for the disposing of this appeal to discuss the 4th and 5th conclusions of law. But since the affirmance of the judgment for a recovery against the defendants Emma J. and Leon J. Granger will probably result in

further proceedings for the appointment of a receiver we feel obligated to indicate our position on this part of the cause.

It is true, as urged by appellant, that a court will not remove corporate officers.

> "Generally speaking, a court of equity has no superintendence over the officers of a corporation. . . . It has no power to award an injunction, indefinitely suspending any officer of a corporation from the exercise of his functions, for this is an indirect mode of removing him from office, and the courts have no power to do this." Thompson, Corporations, Vol. II (2nd Ed.), Par. 1825. (Quoted by appellant.)

But a denial of the power of courts to remove corporate officers of a solvent corporation from their respective offices does not require the denial of the power to appoint a receiver to temporarily suspend the activities of corporate officers when such action is required to protect a corporation and minority stockholders from conduct of corporate officers which threatens ruinous consequences.

> "The appointment of a receiver or manager of a solvent corporation must therefore be considered a strong remedy, which can be justified only in a strong case; and the management of the corporation should be restored to its shareholders as soon as this can be done with safety. Thus, in *Featherstone* v. *Cooke*, Vice-Chancellor Maline appointed a receiver for a company because disputes had arisen between its managing agents, which caused a stoppage of the business and threatened to entail a great loss upon the shareholders; but discharged the receiver as soon as a general meeting of the shareholders had been called and new officers had been chosen. (*Featherstone* v. *Cooke*, L. R. 16 Eq. 298)." I Morawetz on Private Corporations, 2nd Ed., §281, quoted in *Schmidt* v. *Johnson* (1912), 166 Ill. App. 623, 637, 638.

> "A court of equity has inherent power to appoint a receiver in a suit by stockholders against officers or directors and in a proper case it will exercise

this power. But it will not readily do so where the corporation is a solvent and going concern. In such a case it must plainly appear that a receivership is necessary for the protection and preservation of the property and business of the corporation and the rights of the complaining stockholders." 14a C. J. §1944, p. 165.

The facts found in the instant case would justify the appointment of a receiver. We are satisfied, however, that the receiver should have been appointed with power to effect a dissolution of the corporation by means of a sale of its assets and the distribution of the proceeds, provided the stockholders could not within a reasonable time adjust their difficulties. It will be a rare case in which such a drastic remedy can be equitably applied, but it would seem to be the only practicable remedy in the instant case in which all the stock is held by the complaining minority stockholder and one majority stockholder, with the exception of one share, the holder of which is completely controlled by the majority stockholder; and when the offending majority stockholder is the only person connected with the corporation who is capable of managing the business affairs of the corporation.

The foregoing is not in conflict with *Enterprise Printing & Publishing Co.* v. *Craig* (1924), 195 Ind. 302, 144 N. E. 542, rehearing 145 N. E. 309. While in that case this court reversed the action of the trial court in appointing a receiver to sell the assets and to distribute the proceeds we think it is clear that the facts presented no such problem as do those in the instant case. This court's understanding of the facts in the Enterprise Co. case was such that it felt that neither a receiver nor a dissolution was necessary to protect the interests of the corporation. The following excerpt from the opinion in the Enterprise Co. decision indicates the limits of the holding in that case:

"Whatever rights a court might have to appoint a receiver at the suit of a minority stockholder where the corporation was being so mismanaged by the majority stockholders as to threaten it with insolvency, or was being fraudulently operated in such a manner as to deprive the minority stockholders of dividends on their stock which were being fairly earned and *were being diverted to other purposes* (as to which we decide nothing) clearly the facts alleged in this complaint afford no ground for such appointment." (Our italics.)

It is evident from the foregoing quotation that the holding of this court in the Enterprise Co. appeal did not rest upon any such state of facts as is shown by the findings in the instant case.

Appellant contends that the trial court erred in amending both its special finding of facts and conclusions of law after final judgment. The record ▮▮▮▮▮ shows that the trial judge made and filed his special finding of facts, stated his conclusions of law thereon, and entered judgment on the conclusions of law. On the same day appellants' motions for a new trial and in arrest of judgment were overruled. On July 2nd, and before the end of the term, the court on its own motion vacated so much of its judgment as rested upon the original 5th conclusion of law and set aside the fifth conclusion of law and substituted a modified fifth conclusion of law, and then modified its judgment to conform to the substituted fifth conclusion of law. The rule that all courts of record have the inherent power to modify or to vacate their judgments or orders during the term at which they are rendered is too well settled to require argument or citation of authority. Our statutes which authorize a procedure by which parties litigant may procure a judgment to be set aside do not qualify the power of a court to vacate its own judgment within term. When the trial court va-

cated that part of its judgment which rested upon the fifth conclusion of law it was then free to set aside the supporting conclusion of law. The cases cited by appellant to the effect that amendments to special findings of fact or conclusions of law "may be made at any time before final judgment but not afterwards" do not govern the instant case.

The general view of this court respecting the power of the trial court to amend findings and conclusions of law is indicated by the following:

"The special finding of the court stands upon different grounds than the verdict of a jury, but even a jury, before its discharge, may be required to correct and perfect the verdict or answer to interrogatories. The same judge, ordinarily, presides during the entire term, and if he should, in the hurry of business, omit to find on one of the issues, no injury can result, in permitting him, during the term, to correct his finding." *Gulick* v. *Connely* (1873), 42 Ind. 134.

"Our procedure under the present constitution seems to have been molded with special reference to the avoiding of the rigid rules of the common law wherever they interfered with what should be the object and end of all litigation, namely, the speedy and just decision of causes. Whatever, therefore, tends to a just and fair decision, with the least possible expense, annoyance and delay to litigants, must be in harmony with the spirit of our code." *Thompson et al.* v. *The Connecticut Mutual Life Insurance Co. et al.* (1894), 139 Ind. 325, 354, 38 N. E. 796.

"We are, therefore, of the opinion that the trial judge should, in all cases, be permitted to amend his special findings and conclusions of law, at any time before final judgment and during the period within which a bill of exceptions containing the evidence may be filed. . . ." *Thompson* v. *Conn., etc., Co. (supra),* 139 Ind. 356.

The trial court was acting within its power when it vacated within term, that part of the judgment which

rested upon the original fifth conclusion of law and after substituting a new conclusion of law, modified its judgment to conform to the substituted conclusion.

As respects the alleged error in amending one of the special findings and the conclusions of law it is clear that appellant could not have been injured by such action of the court since the amendment did not affect the conclusions of law or judgment based thereon. There is no rule, however, requiring the withdrawal of findings and conclusions of law as a condition precedent to the court's power to amend the original findings.

In support of the motion for a new trial appellant in his points and authorities urges the following:

"The decision of the trial court is not sustained by sufficient evidence; is contrary to law; and, that the assessment of the amount of recovery is erroneous, being too large."

We have examined the evidence, which is quite voluminous, and are satisfied that there is sufficient evidence to support the findings of fact. Evidently the trial court had a difficult task to reconcile some of the evidence and clearly some had to be rejected because of hopeless conflict. We cannot say there were not enough evidentiary facts proved, together with the reasonable inferences therefrom, to support each of the findings of fact, including the amount of recovery. The trial court did not err in overruling appellants' motion for a new trial.

The judgment of the Lake Circuit Court, Frank B. Pattee, Special Judge, is reversed insofar as it "ordered, adjudged and decreed . . . that the defendant Leon J. Granger" be removed as "managing agent or directing head" of "the defendant Tri-City Electric Service Company" and restrained and enjoined from interfer-

ing with the management and control of said corporation and its business affairs"; and the judgment is also reversed insofar as it provided for the appointment of Charles L. Surprise as receiver for the defendant corporation. The judgment is in all other respects affirmed.

The cause is remanded with instructions to the trial court to restate the fourth and fifth conclusions of law and to modify the judgment in conformity with this opinion.

Upon petition for rehearing and re-examination of records costs hereby taxed as follows: Appellant two-thirds ($\frac{2}{3}$) and appellee one-third ($\frac{1}{3}$).