Charles M. RUSSELL,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 2–481A114.

Court of Appeals of Indiana,
Fourth District.

Dec. 8, 1981.

Rehearing Denied Feb. 4, 1982.

Linda Zook, Choate, Visher, Haith & Zook, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

MILLER, Presiding Judge.

Charles M. Russell, an attorney, brings this appeal from his conviction for direct (criminal) contempt which occurred during his representation at trial of an accused criminal. Russell's summary conviction was based on an improper remark directed to the deputy prosecuting attorney in the presence of the trial judge and jury. He contends the court erred 1) in finding his conduct contemptuous; 2) in making a *nunc pro tunc* entry subsequent to his conviction which materially altered the grounds therefor (from merely uttering rude language to shouting it), thus denying him notice of the charges and an opportunity to respond, and 3) in failing to warn Russell his actions would be considered contemptuous. Because the record does not reveal his remarks constituted a gross violation of decency and decorum within the meaning of relevant case law or that they "disturbed" the business and proceedings of the trial court as prohibited by Ind.Code 34–4–7–1, we reverse.

The record of the proceedings on October 21, 1980 discloses the following colloquy during the course of trial and in the presence of the jury after Russell obtained a copy of a deposition from the deputy prosecutor's table:

"MR. COMMONS [Deputy Prosecutor]: Excuse me Mr. Russell, I believe that's my deposition. Why don't you use your own copy?

MR. RUSSELL: I would if you had supplied me with one.

MR. COMMONS: I don't have the obligation to supply you with one. May I have my deposition back?

MR. RUSSELL: Sure. Your Honor, we were never supplied with one and we asked for one and we never received one. I would like to use a deposition to support our case.

THE COURT: Who's the Court Reporter who took the deposition? Did you request that and tender funds?

MR. RUSSELL: We made the request in court and there was never any response after that Your Honor.

THE COURT: Well, normally, depositions are paid for by the attorney who requests them.

MR. RUSSELL: That's fine Your Honor, but we never heard anything more from the Court Reporter with regard to the same. We would have been happy to.

THE COURT: You filed a Praecipe and tendered funds?

RUSSELL: Your Honor, we did not file a Praecipe. We made the request in court and I don't see what the harm is. There is a deposition right here. It's not hurting the State—there's no prejudice to the State. We did ask for it. We don't have it. They are testifying from it. They should have nothing to hide from me.

THE COURT: Is that a certified copy?

MR. COMMONS: No Your Honor, it's not. This document, in my opinion, would not be admissible as evidence because it is not in the proper form.

THE COURT: It has not been certified by the Court Reporter?

MR. COMMONS: That's correct Your Honor. That's why the State referred to Mr. Sells for his testimony rather than offering it.

MR. RUSSELL: Then if that's so Your Honor, it is perfectly admissible discovery material that we were entitled to a copy of.

THE COURT: Weren't you present during the deposition?

MR. RUSSELL: Yes Judge.

THE COURT: Then you would receive the copy of the deposition by paying for it, not by the State paying for it.

MR. RUSSELL: We asked for it Judge. We never got any further information in regards to it.

THE COURT: Well, now, your financial obligation to the Court Reporter is beyond the Court's discretion to make any determination as to whether you did or did not pay.

MR. RUSSELL: Judge, we would have paid for it had we received any information that it was going to be prepared for us. I believe at that time that the statement was made that it would be available for our use in court, if necessary, and there it is and we need it right now. This is a criminal trial. This man is faced with armed robbery.

MR. COMMONS: Judge, I think at this time it would be appropriate to—

MR. RUSSELL: *I would like to finish my statement, Your Honor.*

MR. COMMONS: *Excuse me Mr. Russell.*

MR. RUSSELL: *I will excuse you if you sit down and shut up.*

THE COURT: Both of you, please sit down. Mr. Russell!! (To bailiff) Would you please excuse the jury? I would admonish you not to discuss any testimony that you have heard or to form a conclusion until it is submitted to you for final deliberation.

(The jury is removed from the courtroom)

THE COURT: Mr. Russell, *this Court finds that your behavior is contemptuous. For you to utter the words 'to shut up' to an officer of this court in the presence of the jury and in the presence of the Judge is a contemptuous act* and I am finding you in contempt of this court. Do you wish to respond to that?

MR. RUSSELL: Your Honor, I was making a statement and for the umpteenth time this gentleman stood up yelling and screaming at me. If you will recall, yesterday he screamed at me at the top of his voice when I was making a statement to a witness or to yourself Your Honor. I did not say a word to him. There was no response from this court. There was no response to the jury from this court to disregard this man's statement or his conduct. Today he stood up and he did the same thing. I was talking to you. I was interrupted, which you know is not and was not proper. I have to defend my client and that is the best that I was doing. If the Court took that my actions, as being disrespectful to the Court, they were certainly not intended to be so nor were they intended to be disrespectful to the jury but I have to protect this man and I'm doing the best that I can and when I am interrupted and yelled at and screamed at, I think that there comes a limit to what you can take on that. Thank you Judge.

THE COURT: Nevertheless, this Court does find that you are in contempt of this court and I am going to fine you in the amount of $250.00 for your contemptuous acts. We will take a fifteen minute recess and we will proceed with the trial." (Emphasis added.)

Some two months later, on January 5, 1981, the trial judge overruled Russell's motion to reconsider the contempt conviction and entered the following change in her finding, which she denominated as a *nunc pro tunc* order:

"Jury minutes amended in first paragraph to insert after the words 'Court now finds Attorney Charles Russell in contempt of this Court for Attorney Russell's action .... of *shouting* "shut up" at an officer of the Court during the jury trial 'and Before the words 'and fines Attorny [sic] Charles Russell $250.00." (Emphasis added.)

■ On appeal, Russell persuasively maintains his statement to the deputy prosecutor was not sufficiently disruptive to sustain a conviction for criminal contempt as charged by the trial judge. The relevant statute, IC 34–4–7–1, defines criminal contempt as follows:

"Every person who shall, by the commission of any felony, misdemeanor, or other unlawful act; or by talking, moving about, or by signs, gestures, or in any other manner, in any court of record, while the same is open for the transaction of business, or engaged therein, create any noise therein, *whereby the business and proceedings of said court shall be disturbed* shall be deemed to be guilty of a direct contempt of said court." (Emphasis added.)

In addition, our Courts have held "[t]hese statutory definitions are not all-inclusive of what constitutes direct criminal contempt; they are merely legislative recognition of the court's inherent power to cite and punish for contempt." *Skolnick v. State*, (1979) Ind.App., 388 N.E.2d 1156, *cert. denied*, (1980) 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323. *Accord, McIntire v. State*, (1967) 248 Ind. 142, 223 N.E.2d 347; *La-Grange v. State*, (1958) 238 Ind. 689, 153 N.E.2d 593. "To protect itself against *gross violations of decency and decorum*, it is a necessary incidental power of a Court." (Emphasis added.) *McQueen v. State*, (1979) Ind., 396 N.E.2d 903, 904, *quoting Brown v. Brown*, (1853) 4 Ind. 627, 628. Direct contempt means "conduct *directly interfering with court proceedings* while court is in session, including creation of noise or confusion, disrespectful conduct and refusing to take the witness stand in a trial." (Emphasis added.) *LaGrange v. State, supra* 238 Ind. at 694, 153 N.E.2d at 596.

■ In cases of direct contempt, a court on appeal will accept as true the statement entered of record by the lower court of the matter constituting the contempt, and cannot interfere "unless it clearly appears the judgment is wrong." *Blankenbaker v. State*, (1929) 201 Ind. 142, 153, 166 N.E. 265, 268. However, an appellate court "will examine the record, if necessary, to determine whether the acts alleged to be contemptuous do, in fact, constitute contempt." *State*

*ex rel. Stanton v. Murray*, (1952) 231 Ind. 223, 235, 108 N.E.2d 251, 257. *Accord, Grimm v. State*, (1959) 240 Ind. 125, 162 N.E.2d 454.

In the instant case the trial judge alleged that for Russell "to utter the words 'to shut up' to an officer of this court [opposing counsel] in the presence of the jury and in the presence of the Judge is a contemptuous act...." The trial transcript, as quoted above and certified as correct by the trial judge, reveals Russell's specific remarks were "I will excuse you if you sit down and shut up."

We do not by any means condone the character of these remarks by Russell, made in response to the deputy prosecutor's assertion, "[e]xcuse me." We further do not believe, however, based on the transcript of the trial above quoted including the record of the contempt proceedings, that the alleged offensive language, if merely uttered, manifested either a disturbance in the "business and proceedings" of the trial court as defined by IC 34–4–7–1, *supra*, a direct interference with the same, *La-Grange v. State, supra*, or a gross violation of decency and decorum. *McQueen v. State, supra*.

In viewing the allegations which were made by the trial court we observe, as did the United States Supreme Court in *Eaton v. City of Tulsa*, (1974) 415 U.S. 697, 698, 94 S.Ct. 1228, 1229, 39 L.Ed.2d 693, *quoting Holt v. Virginia*, (1965) 381 U.S. 131, 136, 85 S.Ct. 1375, 1377, 14 L.Ed.2d 290: " '[i]t is not charged that [petitioner] here disobeyed any valid court order, talked loudly, acted boisterously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties.' " The essence of the stated *charge*[1] was that the words used by Russell were themselves contemptuous. Presumably, had Russell more politely asked the deputy prosecutor to refrain from interruptions, (a practice we feel is not uncommon) the contempt citation would not have been made.

---

1. The court's purported amendment of its *finding* to the effect that Russell *shouted* his remarks is discussed *infra*.

In *Eaton*, where a conviction based on a "single isolated usage of street vernacular" in the course of a witness's testimony was reversed, the Supreme Court noted, "'the vehemence of the language used is not alone the measure of the power to punish for contempt. The fire which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice.'" *Eaton v. City of Tulsa, supra* 415 U.S. at 698, 94 S.Ct. at 1229, *quoting Craig v. Harney*, (1947) 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546. "'Trial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.'" *In re Little*, (1972) 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708, *quoting Brown v. United States*, (1958) 356 U.S. 148, 153, 78 S.Ct. 622, 625, 2 L.Ed.2d 589. In *People v. Roberts*, (1976) 42 Ill.App.3d 604, 356 N.E.2d 429, 431, the Illinois Appellate Court observes "*In re Little [supra]* draws a distinction between merely uttering a statement and doing so in a loud and boisterous manner," and in *People v. Hanna*, (1976) 37 Ill.App.3d 98, 345 N.E.2d 179, 180, the same court held a mere statement by a pro se defendant in court that "[t]his Court has messed up so much already it's pathetic" was not sufficient to sustain a contempt conviction as charged, even though the defendant had clearly been loud and boisterous a few minutes before uttering the remark.

In *Grimm v. State*, (1959) *supra* 240 Ind. at 128, 162 N.E.2d at 456, our own Supreme Court arrived at a conclusion similar to that in *Eaton* and *In re Little, supra*, which it expressed as follows:

"[I]t is of the utmost importance in a free society that the power to punish for contempt be not misused as in cases where it is utilized to protect the personal or individual feelings of a judge. As was stated in *Francis v. People of Virgin Islands*, 3 Cir., 1926, 11 F.2d 860, 865, certiorari denied *Francis v. Williams*, 273 U.S. 693, 47 S.Ct. 91, 71 L.Ed. 843, it is said:

'... In our jurisprudence the extraordinary action of contempt of court does not lie to heal the wounded sensibilities of a judge; *it may be invoked only when the offending act impedes or disturbs the administration of justice ....'*" (Emphasis added.)

In *Grimm*, the Court held an action for direct contempt would not lie against an attorney defending an accused criminal where the record merely revealed the trial judge told the attorney he and his client had failed to appear for an arraignment and the attorney then told his client several times in the presence of the judge, "that is not so; I was present." The attorney also told his client at various times the court would not enter a plea of not guilty for him, which statement the trial court determined to be a falsehood. *Id.* at 126, 162 N.E.2d at 455. Our Supreme Court concluded,

"While we recognize that remarks of an attorney to his client might under the circumstances of the particular case be of a nature as to be contemptuous, we do not believe that in the instant case the conduct of appellant as borne out by the record was of such a character as to interfere with the respect, dignity and usefulness of the court as to constitute a contempt of court."

*Id.* at 129, 162 N.E.2d at 456.

We arrive at a similar determination in the case at bar. Without doubt, Russell's remark was unfortunate. We find nothing in the record, however, to reveal it impeded or disturbed the "administration of justice." *Grimm v. State, supra*. Though his manner of asking opposing counsel to refrain from interruption was ill-considered, we do not believe, based on the record, his remarks in that regard represented "gross violations of decency and decorum." *McQueen v. State, supra*. Nor was it alleged, for example, that Russell persisted in a *course of behavior* which previously had been disapproved by the court. *See Luesse v. State*, (1934) 206 Ind. 480, 190 N.E. 177; *Dodge v. State*, (1895) 140 Ind. 284, 39 N.E. 745. In so concluding, we do not necessarily adopt, however, the precise standard applied by federal courts which have held, pursuant to

18 U.S.C. § 401(1),[2] that "mere disrespect or insult cannot be punished where it does not involve an *actual and material obstruction*," (emphasis added), *In re Dellinger*, (7th Cir. 1972) 461 F.2d 389, 400, though we do believe, in the case of attorneys charged with contempt while engaged in vigorous argument, some recognition must be made that the " 'heat of courtroom debate' may prompt statements which are ill-considered and might later be regretted." *Id. See In re McConnell*, (1962) 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434, where the United States Supreme Court stated:

> "[W]e cannot agree that a mere statement by a lawyer of *his intention to press his legal contention until the court has a bailiff stop him* can amount to an obstruction of justice that can be punished under the limited powers of summary contempt which Congress has granted to the federal courts. The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty." (Emphasis added.)

(In *McConnell*, the contempt conviction was reversed because "petitioner never did ask any more questions along the line which the judge had forbidden." *Id.*)

■ We merely hold that where, as here, the alleged contempt reflects nothing more egregious than an ill-advised response to opposing counsel's interruption to the effect that "I will excuse you if you sit down and shut up," the law of this State will not support the summary contempt conviction. Our own research yields no authority of this jurisdiction to the contrary, nor has the State directed our attention to any.

■ We further do not believe Russell's conviction may be sustained by virtue of the trial judge's *nunc pro tunc* amend-

ment of its finding to the effect that Russell *shouted* "shut up" at the deputy prosecutor. It is true the manner of expression may itself make a remark contemptuous. *In re Dellinger, supra* at 400. However, as Russell observed, our courts have held that where, as here, there is no prior written note, minute or memorial reflecting the factual basis for a *nunc pro tunc* entry, such entry is improper and without effect. *E.g., Huffman v. Huffman*, (1981) Ind.App., 424 N.E.2d 456; *State ex rel. Jackson v. Owen Circuit Court*, (1974) 160 Ind.App. 685, 314 N.E.2d 73. A *nunc pro tunc* entry cannot be used to supply some ruling or order that was not, in fact, made. *State ex rel. Jackson v. Owen Circuit Court, supra.* We find the application of such rule of law to be particularly appropriate in the instant case in light of the language of Ind.Code 34–4–7–7, which provides in pertinent part:

> "When any person shall be *arraigned for a direct contempt*, in any court of record of this state, no affidavit, charge in writing, or complaint shall be required to be filed against him; *but the court shall distinctly state the act, words, signs or gestures, or other conduct of the defendant which is alleged to constitute such contempt; and such statement shall be reduced to writing either by the judge making it, or by some reporter authorized by him to take it down when made; and the same, shall be substantially set forth in the order of the Court on the same, together with any statement made in explanation, extenuation, or denial thereof, which the defendant may make in response thereto*; . . . ." (Emphasis added.)

We again refer to *Grimm v. State, supra*, where the trial court found various remarks challenging the court's truthfulness to be contemptuous. Later, "in order to aid the Supreme Court in case of appeal," the trial judge modified his original statement and

---

**2.** That statute provides, in part:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice. . . ."

finding to note the attorney's remarks were made in a "rude, insolent, and disrespectful manner." *Id.* at 126, 162 N.E.2d at 455. On appeal, our Supreme Court addressed this state of the record as follows:

"In fact, the trial judge himself did not until some days after the alleged conduct took place, when considering the motion to reconsider and the motion for new trial, enter its Finding that the conduct on the previous hearing was contemptuous, and thereupon modify and 'clarify' its Finding and judgment to such effect, and it is our view that appellant's conviction cannot stand upon such a state of the record."

*Id.* at 129, 162 N.E.2d at 457.

Accordingly, we conclude Russell's conviction cannot be sustained based on the trial judge's purported amendment of its finding, or upon other, unalleged contemptuous acts which may arguably have occurred during his verbal exchange with the deputy prosecuting attorney. *See Eaton v. City of Tulsa, supra* 415 U.S. at 699, 94 S.Ct. at 1230, where an intermediate appellate court upheld a conviction for "direct contempt" based on conduct not considered by the trial judge in his accusations, and the United States Supreme Court held, in reversing, "[t]he Court of Criminal Appeals thus denied petitioner constitutional due process in sustaining the conviction as a conviction upon a charge not made."

Since we conclude the trial court improperly found Russell's remarks, as charged, to be contemptuous, we need not consider Russell's further assertions of error.

Judgment reversed.

YOUNG, J., concurs.

CONOVER, J., dissents with opinion.

CONOVER, Judge, dissenting.

I respectfully dissent.

On appeal, we accept as true the statement entered of record by the lower court of the matter constituting the contempt, and also may examine the record, if necessary, to determine whether the acts alleged to be contemptuous do, in fact, constitute acts of contempt. *State ex rel. Stanton v. Murray,* (1952) 231 Ind. 223, 235, 108 N.E.2d 251, 257. From the record before us, it is easy to determine the nature of the contumacious conduct here involved.

The colloquy between attorney Russell and the deputy prosecutor, fully set forth in the majority's opinion, involved Russell's attempt to use the State's copy of a deposition. It is clearly apparent from the record this exchange between attorneys became more heated the longer it continued, ending in this manner:

"MR. RUSSELL: . . . This is a criminal trial. This man is faced with armed robbery.

MR. COMMONS: Judge, I think at this time it would be appropriate to—

MR. RUSSELL: I would like to finish my statement, Your Honor.

MR. COMMONS: Excuse me Mr. Russell.

MR. RUSSELL: I will excuse you if you sit down and shut up.

THE COURT: Both of you, please sit down. Mr. Russell!![1] . . . (To bailiff) Would you please excuse the jury? . . ."

The exchange had become so heated, Judge Gifford had to intervene, *twice* prompt Mr. Russell to sit down, and order the jury to retire. It is clear from this record the colloquy between Russell and Commons had disturbed the transaction of the court's business, namely, the jury trial in progress and constituted a direct contempt of court, cf. IC 34–4–7–1.[2] The trial

---

1. Russell evidently did not comply when the Court first directed both counsel to sit down, thus requiring Judge Gifford to additionally instruct Russell to do so by the specific and forceful use of his name.

2. Taking attorney Russell's response to the trial court's finding of contempt at face value, one

wonders why the deputy prosecutor was not also "hauled up short" by a similar finding at the end of that exchange, if he had been "yelling and screaming" at Russell "at the top of his voice" and "for the humpteenth time." However, that question must go unanswered because it is not before us.

court in such circumstances not only has the right, it has the *duty* to intervene to preserve order.

It is true, Judge Gifford's choice of words as to Russell's contumacious conduct could have been more descriptive at the time.[3] However, Judge Gifford's amendment seventy-five days later which changed the word "utter" to "shouting" did not constitute a material change in the grounds upon which Russell's contempt conviction had been based, it merely gave a more precise description of the contumacious conduct to present a clearer record on appeal. The change was made pursuant to Russell's filing of a motion to reconsider, and prior to her ruling on Russell's Belated Motion to Correct Errors. The change was made seventy-five days later, well within the time provided by statute during which it retained power and control over the contempt judgment, cf. IC 33–1–6–3. No written note or memorandum was required to make such change.

It has long been recognized in this state that the trial court has the inherent power to amend the record based on its own knowledge and recollection before rendition of the final judgment. *Moerecke v. Branyan*, (1915) 183 Ind. 591, 108 N.E. 948. Thereafter, the Indiana courts have traditionally possessed broad powers in "term time" to modify, set aside or vacate their judgments. *Clouser v. Mock*, (1959) 239 Ind. 143, 155 N.E.2d 745. *See also* 49 C.J.S. Judgments § 229, p. 436; *Tri-City Electric Service Co. v. Jarvis*, (1933) 206 Ind. 5, 185 N.E. 136; *Livingston v. Livingston*, (1921) 190 Ind. 223, 130 N.E. 122; *Ryon, Receiver v. Thomas*, (1885) 104 Ind. 59, 3 N.E. 653; *Merrill v. Shirk*, (1891) 128 Ind. 503, 28 N.E. 95.

Before terms of court were abolished in 1967, it was the general rule that "a court has full and complete control of the record of its proceedings during the term at which the proceedings are had, and during such term, for good cause, may correct, or vacate

any of its judgments or orders made therein." *State ex rel. Neal v. Superior Court of Marion County, Room No. 2, et al.*, (1930) 202 Ind. 456, 174 N.E. 732. When terms of court were abolished [T.R. 72(A)], the traditional power of a court over its record was limited to 90 days after judgment. Ind. Code 33–1–6–3. Courts now have the same power to act during the 90-day period following rendition of a judgment as they did during the former term time, including the power to amend the records to conform to the truth. *State ex rel. Jackson v. Owen Circuit Court*, (1974) 160 Ind.App. 685, 314 N.E.2d 73; *Wadkins v. Thornton*, (1972) 151 Ind.App. 380, 279 N.E.2d 849.

Although a writing to evidence a change in the record is required after the "term" time, it has historically not been a requirement during that time. The purpose of a writing is to protect against fraud and failing memories and to ensure an accurate basis for the entry. *State ex rel. Jackson v. Owen Circuit Court*, (1974) 160 Ind.App. 685, 314 N.E.2d 73. In this case, the amendment to the facts in the record was made 75 days after judgment. We can assume the trial court's memory of the incident had not dimmed in 75 days, and we have no reason to think the trial court intentionally misrepresented the facts to which it was a witness.

Moreover, the power of the court to modify its record and to grant relief from its own judgment is the foundation of most of our post-judgment trial rules. It is not coincidental that most of a trial court's powers over a record are lost when it rules on the motion to correct errors. Both Trial Rules 59 and 60 are indicative of the broad powers available to the trial court during the "term" period.

I do not think the law nor reason requires us to dismiss the court's clarification of the record. I believe the trial court could and should have amended its record to conform to the truth. It was not required to prove what it knew by introducing a contempora-

---

**3.** "THE COURT: Mr. Russell, this Court finds that your behavior is contemptuous. For you to utter the words 'to shut up' to an officer of

this court in the presence of the judge is a contemptuous act . . ."

neous writing. Such a rule is an erosion of long-standing and traditional powers of the court.

Judge Gifford's judgment on this subject matter is not clearly wrong, based upon the record before us. Thus, we cannot interfere on appeal. *Blankenbaker v. State*, (1929) 201 Ind. 142, 153, 166 N.E. 265, 268.

The trial court's modification merely clarified the original basis upon which Russell's conviction was based. A change or modification of a judgment to make it more explicit is proper. 17 I.L.E. (*Judgments*) ¶ 113, p. 228. Error may not be predicated upon the amendment of a pleading where a defendant's substantial rights are not prejudiced thereby. *Henderson v. State*, (1980) Ind., 403 N.E.2d 1088, 1093; 9 I.L.E. (*Crim. Law*) ¶ 883, p. 111.

In *Grimm*, the trial court charged the attorney's language accused the court of fraud. Its later amendment substantially altered the original finding by saying the attorney's statements were made "in a rude, insolent and disrespectful manner." *Grimm v. State*, (1959) 240 Ind. 125, 162 N.E.2d 454, 455. Of course, such a material change created a confused state of the record in that case. Such confusion is not here present.

Judge Gifford's modification did not prejudice Russell. It is clear from Russell's response to the finding of contempt he knew the precise reasons for that finding. Further, he filed his Petition for Leave and his Belated Motion to Correct Errors nine days *after* entry of the modification order. Thus, Russell was additionally provided with a concise statement of why he was found in contempt, as an assistance to him "in setting his course for an appeal." The modification also provided this court "with a clear statement of the allegedly contumacious conduct," upon which Russell had been convicted, cf. *Skolnick v. State*, (1979) Ind.App., 388 N.E.2d 1156, 1163–4, *cert. den'd*, (1980) 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323.

The question of contempt should be considered in light of the amended record which has been certified to this court as complete and true by the trial judge. A boisterous colloquy between opposing counsel in court while a jury trial is in progress is obviously disruptive of the court's business, cf. *People v. Hanna*, (1976) 37 Ill. App.3d 98, 345 N.E.2d 179, 180. Based upon that record, I would affirm the trial court's judgment.