Frank HOPPING, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 15A04–9307–CR–264 [1].

Court of Appeals of Indiana,
First District.

Jan. 31, 1994.

William R. Pfister, Lawrenceburg, for appellant-defendant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

It is hard to imagine that in 1994 one would mount a scurrilous ancestral attack on a judge, verbally abuse court personnel, and then claim his actions do not constitute contempt of court.

Appellant-defendant Frank Hopping challenges his conviction for two counts of direct criminal contempt. Hopping contends that his actions did not constitute direct contempt because they did not disrupt a judicial proceeding.[2] We affirm.

2. In his second amended brief, Hopping purports to raise twelve issues on appeal. Issues B through I merely state in alternative ways Hopping's claim that his actions did not constitute direct contempt because he did not interfere with a judicial proceeding. This is the sole issue which Hopping attempted to address in the argument section of his brief.

Hopping waived all remaining issues, including whether his sentence was manifestly unreasonable, whether the summary proceeding was improper, and whether the trial court erred in refusing to release him pending bail, by failing to support them with any argument or citation to authority. See Ind.App.Rule 8.3(A)(7); *Everroad v. State* (1991), Ind., 571 N.E.2d 1240, 1246. Not only did Hopping fail to support these issues with any argument or citation to authority, but he did not mention a single word concerning them after listing them as potential issues. Failure to address an issue specifically in the argument section of an appellate brief results in waiv-

## FACTS [3]

■ At approximately 11:00 a.m. on July 8, 1993, Hopping entered the Dearborn County Court office seeking to file seven small claims complaints. Hopping, a seventy-one-year-old business man, wanted to have his cases set for hearing all on the same day. However, bailiff Patricia Ritzmann informed Hopping that because his cases involved landlord-tenant disputes they were considered contested and thus, only one could be set per day. When Hopping demanded that his cases all be set for the same day, Ritzmann asked Judge G. Michael Witte, who was in his chambers working on other court matters, whether Hopping's cases could be scheduled on the same day. Judge Witte answered in the negative affirming the court's scheduling policy to set only one contested case per afternoon and to set multiple cases only if they were uncontested.

When Ritzmann informed Hopping of Judge Witte's response, he became defiant, belligerent, loud, boisterous, obnoxious, and uncontrollable, insisting that his cases be heard on the same date. Upon hearing Hopping verbally abuse court personnel, Judge Witte explained the court's scheduling policy to Hopping himself. Thereafter, Hopping was asked to leave but refused and began verbally assaulting Judge Witte. Hopping threatened to publish an advertisement in the newspaper alleging Judge Witte was a drug user and a drug dealer and that court personnel treated him unfairly.

Interpreting Hopping's allegations as an attack upon the integrity of the judge and the court and as an attempt to intimidate the court into scheduling his cases as he demanded, Judge Witte ordered Hopping under arrest for contempt of court and ordered him into the courtroom. Hopping went into the courtroom, but quickly exited informing Judge Witte that he was a busy man with more important things to do. Hopping ignored Judge Witte's repeated orders to return to the courtroom.

When Deputy Sheriff Michael Horton arrived, he escorted Hopping back into the courtroom. At approximately 11:10 a.m., Judge Witte held a contempt hearing advising Hopping that he was being held in direct criminal contempt for his verbal abuse attacking the reputation and integrity of the court and Judge Witte, his attempts to intimidate court personnel into scheduling his cases as he saw fit, and his failure to follow the judge's orders. Hopping denied the allegations. Judge Witte found Hopping guilty and sentenced him to thirty days in the Dearborn County Jail.

As Deputy Horton led Hopping out of the courtroom, he exclaimed "[w]ell, I had a lot of friends killed in World War II by the Japanese. It might've been some of [Judge Witte's] relation, you don't know." Record at 44–45. Judge Witte, who is of Japanese–American descent, ordered Hopping to have a seat in the courtroom for another contempt hearing based upon these comments. When Judge Witte gave him an opportunity to respond, retract, or apologize, Hopping denied making the statements. Judge Witte then found Hopping guilty of a second count of direct criminal contempt. Judge Witte sentenced Hopping to thirty days in jail to be served consecutively to the thirty days imposed for his first conviction.

Hopping was taken into custody immediately by Deputy Horton. He was incarcerated in the Dearborn County Jail on July 8, 1993. On July 16, 1993, Judge Witte denied Hopping's request to be released on bail pending his appeal. However, on July 22, 1993, this court granted Hopping's request to be released on bail pending appeal.

## DISCUSSION AND DECISION

■ Hopping challenges both contempt convictions. In cases of direct contempt we accept as true the statement entered of rec-

---

er of that issue. *National By–Products v. Ladd* (1990), Ind.App., 555 N.E.2d 518, 520.

3. We note that the argumentative nature of Hopping's statement of facts and his inclusion of extraneous allegations which do not appear in the record of proceedings violate Ind.Appellate Rule 8.3(A)(5), which requires a concise narrative statement of the facts in a light most favorable to the trial court's judgment supported by reference to specific pages in the record. *See Moore v. State* (1981), Ind.App., 426 N.E.2d 86, 89–90.

ord by the trial court of the conduct constituting the contempt. *Russell v. State* (1981), Ind.App., 428 N.E.2d 1271, 1274 However, we will examine the record, if necessary, to determine whether the conduct alleged to be contemptuous does, in fact, constitute contempt. *Id.* We will not interfere with the trial court's judgment unless it appears that the judgment is wrong. *Id.*

■■■ Specifically, Hopping contends that his actions did not disrupt a court proceeding as required by IND.CODE 34–4–7–1. I.C. 34–4–7–1 provides that any person who disturbs the business and proceedings of a court shall be deemed guilty of direct contempt. However, statutory definitions of what constitutes direct criminal contempt are not all-inclusive, but merely recognize the court's power to cite and punish for contempt. *Skolnick v. State* (1979), 180 Ind.App. 253, 388 N.E.2d 1156, 1162, *cert. denied*, 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323 (1980). Courts have the inherent power to determine what other acts or conduct may constitute direct or indirect contempt. *Andrews v. State* (1987), Ind.App., 505 N.E.2d 815, 830.[4]

■■■ Although direct contempt usually refers to conduct directly interfering with court proceedings while court is in session, it includes any act committed in the presence of and with knowledge of the court which manifests a disrespect for and defiance of a court. *Skolnick*, 388 N.E.2d at 1162–63.[5] Direct contempt may result from an act committed within the personal knowledge of the judge, even though it does not disrupt a court proceeding. *See Andrews*, at 831 (defendant held in direct criminal contempt for violating judge's order to remain in the courtroom after proceeding had ended where the judge returned to find defendant had left).

In the present case, Hopping became defiant, belligerent, obnoxious, and uncontrollable with Judge Witte and his staff when they informed him that it was against court policy to schedule cases in the manner in which he demanded. He refused to comply with Judge Witte's orders. He then mounted a scurrilous ancestral attack on Judge Witte. Hopping's actions were committed in the presence of and with the knowledge of Judge Witte. Hopping attacked the integrity of the court and attempted to intimidate court personnel. His actions disrupted court personnel preventing them from conducting any other court activity. Moreover, Hopping's conduct showed a blatant disrespect for and defiance of the court. Judge Witte correctly held Hopping in direct criminal contempt for this contemptuous behavior.

Judgment affirmed and remanded to the trial court to order Hopping incarcerated to serve the remainder of his sentence.

ROBERTSON, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent. While the majority has correctly said that a person who "would mount a scurrilous ancestral attack on a judge and verbally abuse court personnel" would be engaging in contemptuous conduct, that particular conduct should not be considered direct criminal contempt of the court. At the time Hopping was held in direct criminal contempt, there was no scheduled hearing, he was not in the courtroom, and the court was not in session. Thus, the judgment of guilt for direct contempt was not supported by the facts and should be reversed.

Direct contempt usually refers to conduct directly interfering with court proceedings while court is in session. IND.CODE 34–4–7–1 and I.C. 34–4–7–2. Such conduct must generally take place in or immediately adjacent to the courtroom, while court is in session, so that the judge has personal knowledge of such conduct in his official capacity. *LaGrange v. State* (1958), 238 Ind. 689, 153 N.E.2d 593, 596. It could best be described as an act committed in the presence of the

---

4. Contempt powers are necessary to protect the orderly administration of justice and to maintain the dignity and authority of the court. *Johnson v. State* (1981), Ind.App., 426 N.E.2d 104, 106.

5. Indirect contempt is distinguished from direct contempt in that it is an act committed outside the presence of the court which affects the court's proceedings. *Skolnick*, 388 N.E.2d at 1163, n. 3.

court or so near it as to interrupt its proceedings while it is in session. No formal charges are filed and no evidentiary hearing is held in a direct contempt proceeding. The findings must be beyond a reasonable doubt.

Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender has notice. I.C. 34–4–7–3. Indirect contempt arises from conduct not occurring in the presence of the court, such as failure of a party to obey a court order or process, whereas direct contempt is committed in the immediate view or presence of the court. *Hegedus v. Hegedus* (1978), 178 Ind.App. 620, 383 N.E.2d 446, 447. Indirect contempt proceedings are to be filed as independent actions which entitle the accused to notice of the nature and circumstances of the charges against him or her, and an opportunity to show cause why he or she should not be attached and punished. Such proceedings also allow the defendant to be represented by counsel and if a possibility exists that he or she may be incarcerated and he or she is indigent, the court must appoint an attorney. *In Re Marriage of Stariha* (1987), Ind.App., 509 N.E.2d 1117, 1121.

The first occurrence of contempt occurred when the defendant became verbally abusive with the court personnel and Judge Witte by attempting to intimidate the court and attacking the integrity of the judge. The defendant had come to the court office to file some pleadings in several small claims actions. He was not there pursuant to a scheduled hearing or other court-ordered process. This incident took place in the court offices and not in the courtroom. This incident did not interrupt any court proceeding nor did it take place in front of the public. The court, because the incident took place outside the court and did not disrupt a court proceeding, should follow the statutory provisions and file a rule to show cause why the defendant should not be attached and punished for his indirect criminal contempt.

The trial judge held a contempt hearing immediately after informing the defendant he was being held in direct contempt of the court for his verbal abuse attacking the reputation and integrity of the court and the judge, his attempts to intimidate the court

personnel into scheduling his case as he saw fit, and his failure to follow the judge's orders. Hopping denied the allegations. This further illustrates the importance of following the procedure for indirect contempt so that the defendant could be heard on the issue and have the benefit of counsel, if he chooses.

As the defendant was being led out of the courtroom by the deputy to begin a sentence of 30 days in the Dearborn County Jail, he was heard to make a remark concerning the Japanese heritage of the judge. Defendant denied making the statement and he was again found guilty of a second count of direct criminal contempt. Again, it is essential that people appearing before the court be given all the procedural protections entitled to one accused of any criminal act.

Direct criminal contempt must be such an open threat to the court that if it is not instantly suppressed the court's authority will be diminished. The threats made by the defendant were not jeopardizing any proceedings nor were they matters that could not have been formally put in writing and set for hearing. Absent a showing that immediate punishment is required to maintain order in and respect for the court, there is no proof of direct contempt. *Brennan v. State* (1961), 242 Ind. 79, 173 N.E.2d 312, 313. The determination of whether a contempt of court has been committed does not depend upon the alleged intention of the offending party, but on the act. The discretion of power under actions of this kind must be carefully weighed to preserve the rights of its citizens for whose sole benefit the courts were organized. *Coons v. State* (1922), 191 Ind. 580, 134 N.E. 194, 198. Hopping's actions did not directly interfere with any court proceedings, did not delay any court proceedings, nor bring the court itself into disrepute. I would reverse the judgment of the trial court.