## Ex Parte Wright.

CONTEMPT.—*Direct and Constructive Defined.*—A contempt of court is either direct or constructive :   Direct, when there is an open insult, in the face

of the court, to the person of the judge while presiding, or a resistance of its powers in his presence ; constructive, when an act is done, not in the presence of, but at a distance from, the court, in disobedience of an order, or to the process, of the court, tending to embarrass, interrupt, obstruct or prevent the administration of justice.

SAME.—*Practice in Punishing Direct.—Record.*—An offender may be instantly punished for a direct contempt, by arrest and fine or imprisonment, without other proof or examination than the knowledge of the judge, gathered from his senses ; but, in rendering judgment and making up the record in such case, the causes of the contempt must be stated.

SAME.—*Practice in Punishing Constructive.*—In case of a constructive contempt, a *prima facie* case must be made against the alleged offender, either by an affidavit, by the official return of some officer, or by other legitimate evidence, in a way that can be made part of the record.

SAME.—*Rule Nisi.— Writ Attaching.*—In such case a rule *nisi* should be entered against the offender before the writ should issue, unless delay be dangerous to the injured party ; but in no case of constructive contempt can either the rule or the writ go, until the facts are put upon record in such manner that they may be demurred to, moved against or controverted.

SAME.—*Appeal to Supreme Court.*—An appeal lies to the Supreme Court from a judgment of the circuit court punishing a contempt.

SAME.— *Contempt by Defaulting Administrator.—Statute Construed.*—A contempt by an administrator, under section 161 of the decedents' estates act, 2 R. S. 1876, p. 549, consists of an embezzlement, or a concealment, of the goods of the estate, *and* a refusal to answer upon examination, *or* to deliver the same, *or* to secure the persons interested in the estate in the value of the same, with ten per cent. damages thereon.

SAME.—*Judgment.— Fine.—Imprisonment.*—Upon a showing by an administrator, and a finding by the court, of the amount with which he was chargeable, the court made an order that he pay the same over or stand in contempt ; whereupon he reported to the court that it was physically impossible for him, for want of means, to pay the same, but that he had arranged with the persons interested, and was ready, to convey certain real estate to them to secure the amount due. But the court summarily fined him in a certain sum, and ordered his imprisonment in the county jail for a specified time.

*Held*, that the fine was unauthorized, and that the imprisonment ordered was illegal, and should have been only until the administrator had complied with the order of the court, or until he was discharged according to law.

From the Marion Circuit Court.

*A. C. Harris*, for appellant.

BIDDLE, J.—On the 27th day of July, 1876, Charles A.

Wright was appointed by the clerk administrator of the estate of William Northam, deceased; he accepted the trust, gave bond, was duly qualified, and received his letters of administration, all of which was subsequently confirmed by the court.

On the 14th day of December, 1878, " he filed his report, in partial settlement of " the said estate, showing that he was chargeable with the sum of two thousand three hundred and eighty-three dollars and seven cents, subject to the deduction of a credit of two hundred and ninety-five dollars and eighteen cents, leaving in his hands to be administered, the sum of two thousand and eighty-seven dollars and eighty-nine cents.

On the 29th day of April, 1879, without any further action in the matter, or any notice to the administrator, so far as any thing appears of record, the court made the following record :

" The court being informed in the above entitled· estate, that Charles A. Wright, the administrator thereof, had [wasted] and was wasting said estate, now upon its own motion ordered an attachment against said administrator."

The attachment was issued, by virtue of which Wright was arrested, and his body brought before the court. On a hearing he was ordered to report the condition of the estate, by the 14th day of May, 1879, and was discharged until that date, upon his own recognizance. On the 17th day of May, 1879, Wright " filed a statement excusing himself from complying with the order of the court hereinbefore entered." Upon hearing, the court found that there was due to said estate, from said Wright, the sum of two thousand nine hundred dollars, which he had converted to his own use, failed to pay over, and refused to make farther report in the matters of said estate. Upon giving bond for his appearance before the court on the 29th day of May, 1879, the court " withheld judgment and sentence against Wright,

for said contempt, until said 29th day of May, 1879." On the 30th day of May, 1879, Wright appeared before the court, and filed a supplemental report. Thereupon it was "considered and ordered by the court, that Charles A. Wright be fined in the sum of one dollar, and imprisoned in the county jail for three months, for his contempt of the order of this court, in not paying the balance due from him to said estate into court, as heretofore ordered;" to all of which Wright excepted. Wright paid the fine in open court, and moved the court to modify the order so as to relieve him from imprisonment in the county jail. His motion was overruled, and he excepted, and appealed to this court.

It is insisted, on behalf of Wright, that the attachment has no sufficient foundation, and that there is no law in this State authorizing the fine and imprisonment adjudged against him.

Writs of attachment to punish contempts in the common-law courts were known in the earliest history of our jurisprudence. They were used in the Court of Chancery to bring in contumacious defendants, and compel an answer to the bill, or enforce a compliance with the orders of the court, upon which common-law writs of execution could not issue. By the statute of Westminster 2, 13 Edward I., c. 39, it was ordered, "that in case the process of the king's court be resisted by the power of any great man, the sheriff shall chastise the resisters by imprisonment, * * and if the sheriff himself be resisted, he shall certify to the courts the names of the principal offenders, their aiders, consenters, commanders and favourers, and by a special writ judical they shall be attached by their bodies to appear before the court, and if they be convicted thereof they shall be punished at the king's pleasure." The writ of attachment for contempts became a part of the law of England, and was confirmed by *Magna Charta.* 4 Bl. Com. 284, 286.

A contempt of court is either direct or constructive ; or, as the latter was anciently called, consequential. A direct contempt is an open insult, in the face of the court, to the person of the judges while presiding, or a resistance to its powers' in their presence. A constructive contempt is an act done, not in the presence of the court, but at a distance, which resists their authority, as disobedience to process, or an order of the court, such as tends in its operation to obstruct, interrupt, prevent or embarrass the administration of justice. For a direct contempt the offender may be punished instantly by arrest and fine or imprisonment, upon no farther proof or examination than what is known to the judges by their senses of seeing, hearing, etc.; but, in rendering the judgment and making up the record, the causes of such contempt should be stated.

The grounds of a constructive contempt should be stated by affidavit, by the return of some officer, or in some way made known to the court, *prima facie,* by witnesses or otherwise, so that they may be made a part of the record ; and this should be done before a rule or writ is granted against the alleged offender. 4 Bl. Com., 283, 286, 288; Tidd Practice, 478, 482.

Appeals did not lie, from judgments for contempt, from the courts of common law, nor from the court of chancery ; nor, in the State of Indiana, from any court, except by statute in a few specific cases, until the adoption of the present code. Indeed, after that, it was still a disputed question, until the decision of *Whittem* v. *The State,* 36 Ind. 196, wherein the question is fully reviewed and put at rest, by holding that an appeal will lie from the circuit court to this court in all cases of contempt.

Statutes authorizing punishments for contempt, being against liberty and common right, must be construed strictly. BLACKSTONE well remarks : " It can not have escaped the attention of the reader, that this method of

making the defendant answer upon oath to a criminal charge is not agreeable to the genius of the common law in any other instance; and seems indeed to have been derived to the courts of King's bench and common pleas through the medium of the courts of equity." 4 Bl. Com. 287, 288. And the American courts, throughout their decisions, frequently express similar opinions.

The only statute that we are aware of in this State, governing proceedings in contempt, in cases like the present, is the following:

"Sec. 161. In addition to removing him, if any executor or administrator shall embezzle or conceal any of the property of the decedent, the court shall attach his person and property, and examine him under oath touching such property, and on his refusing to answer in such examinations, or to deliver up such property, or secure the value thereof to the persons interested in such estate, with ten per centum damages thereon, shall commit him to jail until the order of the court is complied with, or he be discharged according to law." 2 R. S. 1876, p. 549.

Under this section a contempt consists of embezzlement or concealment of the goods, *and* a refusal to answer upon examination, *or* to deliver up such property, *or* to secure the persons interested in the estate, with ten per cent. There is no ground herein upon which to base a contempt for not paying over money found due from the executor or administrator. And, before an attachment should issue upon a constructive contempt, all the facts which constitute the contempt, must be made to appear *prima facie* to the court, by affidavit, or the official return of some officer, or by other legitimate evidence, in a way that they can be made a part of the record, and then, unless the case is flagrant, and will not admit of delay, a rule *nisi* should first be granted against the alleged offender, and an opportunity afforded him to defend himself from the charge; but

when the case is urgent, and delay dangerous to the interests of the injured party, upon case made, then the writ may go without first granting a rule *nisi*.  In no case, however, of a constructive contempt, should either the rule or the writ go, until the facts are put upon record in some way that they can be demurred to, moved against, or controverted by evidence.  The judge can not, in a constructive contempt, from facts remaining in his own mind, exercise the judicial discretion resting in his breast, and grant either a rule *nisi*, or the writ of attachment.  Such hidden facts can not be put upon record, nor pleaded to, nor controverted in any method known to judicial proceedings.

The evidence in the present case is all before us. It consists of the orders of the court, and the report of the administrator sworn to, nothing more.  It shows the appointment of Wright as administrator;  that there is in his hands a balance amounting to the sum of two thousand and eighty-seven dollars and eighty-nine cents ;  that it is " physically impossible for him to pay it at present ; that, after the order of attachment was made against him, an agreement was made between himself and the persons interested in the estate to convey certain lands of the value of two thousand four hundred dollars, to secure the debt to them ;  and that he is ready to convey the same at any time."   There is no evidence tending to show embezzlement, except the fact that he can not pay over the money at the present time ;  none tending to show any concealment of the property ;  no refusal to return property, except that he has not got it to return, and his offer to secure the injured party.   In all of this there is no contempt within the meaning of the statute.

It must be noticed, too, that, if the contempt was established, the statute does not authorize the infliction of a fine at all, nor the infliction of punitive imprisonment, but only, after the contempt is proved, imprisonment " until

the order of the court is complied with, or he be discharged according, to law." The purpose of the statute is to enforce obedience to the orders of the court, not to punish the administrator. As the judgment now stands, if Wright were to comply with the order of the court at once, it would not discharge him from imprisonment. He would have to remain in prison the remainder of the three months, or appeal to this court, or·seek executive clemency to be discharged. We know of no other way by which he could "be discharged according to law."

The following authorities, in addition to those already cited, fully discuss the question of contempts of court, and will show a remarkable harmony, except as to the right of appeal, in the statutes of the several States of the Union, and in the methods of procedure, and the remedy. _The State_ v. _Tipton_, 1 Blackf. 166 ; _McMullen_ v. _Furnass_, 1 Ind. 160 ; _Kelly_ v. _Weddle_, 1 Ind. 550 ; _Hunter_ v. _The State_, 6 Ind. 423 ; _Kernodle_ v. _Cason_, 25 Ind. 362 ; _Ex Parte Smith_, 28 Ind. 47 ; _Whittem_ v. _The State_, 36 Ind. 196 ; _The State_ v. _Earl_, 41 Ind. 464; _Cutler_ v. _The State_, 42 Ind. 244; _McConnell_ v. _The State_, 46 Ind. 298 ; _Burke_ v. _The State_, 47 Ind. 528; _Haskett_ v. _The State_, 51 Ind. 176 ; _Wilson_ v. _The State_, 57 Ind. 71 ; _Stumph_ v. _Pfeiffer_, 58 Ind. 472 ; _Crook_ v. _The People_, 16 Ill. 534 ; _Seaman_ v. _Duryea_, 10 Barb. 523 ; _Pitt_ v. _Davison_, 37 N. Y. 235 ; _Adams_ v. _Haskell_, 6 Cal. 316 ; _Ex Parte Cohen_, 6 Cal. 318; _Ex parte Kearney_, 7 Wheat. 38 ; _Gray_ v. _Cook_, 24 How. Pr. 432 ; _The Case of Brass Crosby, Lord Mayor of London_, 3 Wils. 188 ; _Holman_ v. _The Mayor of the City of Austin_, 34 Texas, 668 ; _In the Case of. Yates_, 4 Johns. 317 ; _In the Matter of Blair_, 4 Wis. 521 ; _Hosack_ v. _Rogers_, 11 Paige, 603 ; _Johnston_ v. _The Commonwealth_, 1 Bibb, 598 ; _Haines_ v. _Haines_, 35 Mich. 138 ; _Bickley_ v. _Commonwealth_, 2 J. J. Mar. 572 ; _Baltimore and Ohio R. R. Co._ v. _City of Wheeling_, 13 Grat. 40 ; _Commonwealth_ v. _Newton_, 1 Grant, Pa.

453; *In re Hummel,* 9 Watts, 416; *Yates* v. *The People,* 6 Johns. 337; *Ex Parte Rowe,* 7 Cal. 175; *Vertner* v. *Martin,* 10 Sm. & M. 103; *M'Creadie* v. *Senior,* 4 Paige, 378; *Stuart* v. *The People,* 3 Scam. 395; *The People* v. *Hackley,* 24 N. Y. 74; *Regina* v. *Paty,* Ld. Raymond, 1105; *Ex Parte Langdon,* 25 Vt. 680; *The People* v. *Craft,* 7 Paige, 325; *The Albany City Bank* v. *Schermerhorn,* 9 Paige, 372; *Watson* v. *Nelson,* 69 N. Y. 536; Coke Lit. 288; 3 Redfield Wills, 412, secs. 27, 28, 29; *Rex* v. *Belt,* 2 Salk. 586; *Anonymous,* 2 Salk. 586.

We think, in this case, that there was no sufficient ground laid to authorize the attachment; that the facts proved do not constitute a contempt; that the fine assessed was without authority of law; and that the imprisonment exceeded the authority of the court, even though a contempt had been proved.

The judgment is reversed, and the cause remanded, with instructions to discharge the administrator from custody.