Hawkins *et al.* *v.* The State.

No. 15,007.

HAWKINS ET AL. *v.* THE STATE. ·

CONTEMPT.—*Action for Possession of Real Estate.*—*Change of Venue.*—*Jurisdiction not Affected Thereby.*—*Circuit Court.*—*Power to Punish for Contempt.* —Where an action was instituted for the possession of land situated in the county of D., and on change of venue the cause was removed to the circuit court of another county, the latter court had power to enforce obedience to its process, and to punish for contempt those who resisted the officers charged with the execution of that process. The fact that the land was situated in another county, does not affect the jurisdiction of the court whose process was resisted. The removal of the cause from the circuit court where it originated to another tribunal, vested the latter tribunal with plenary jurisdiction of the cause, and all its incidents, and the former court had no longer any jurisdiction.

SAME.—*Circuit Court.*—*Inherent Power to Punish for Contempt.*—*Legislative Limitations.*—Among the powers which vest in a constitutional court, such as our circuit courts, is that of maintaining its existence and dignity by punishing those who assume to treat it with contempt. This power is an inherent one, and exists independently of statute. The Legislature may, within limits, regulate the procedure, but it can not by any regulation abridge or fetter the inherent power itself.

SAME.—*Voluntary Appearance of Parties.*—*Issuance of Attachment Unnecessary.* —Where an order was entered requiring the parties to show cause why they should not be punished for contempt, and they responded to the rule by an answer, it was proper for the court to inflict punishment without issuing an attachment, for the wrong-doers had voluntarily appeared, and were in court. Under section 1013, R. S. 1881, there is no necessity for issuing an attachment when the parties voluntarily appear, and if there were, it would not apply to a case like the present, since the parties charged with contempt were parties to the action in which the judgment was rendered on which the process was issued, and under section 1014, R. S. 1881, which governs in such a case, the issuance of an attachment would be unnecessary.

SAME.—*Information for.*—*Sufficiency of.*—No great strictness is required in the construction or form of a rule requiring a defendant to show cause why he should not be punished for contempt. In cases where an information is filed it is sufficient if the rule informs him, in a general way, of the nature of the charge preferred against him.

SAME.—*Writ of Ejectment.*—*Resistance to Service of.*—*When will Constitute Contempt.*—*Sale of Interest after Judgment.*—*Effect of.*—*Judgment for Possession.* —*Binding Force of.*—In a proceeding to punish the defendants for contempt for resisting the execution of a writ of ejectment, in an action for

possession, the parties can not purge themselves of the contempt by showing that they had assumed to sell their interest in the land, after judgment had been given against them. They could not put themselves in a position to resist the enforcement of the judgment by claiming through their own grantees. All who bought after the judgment, or, indeed, after the legal notice was given, were purchasers *pendente lite*, and must yield to the process issued on the judgment awarding possession to the plaintiff. No question can be raised by resisting the execution of that process which was adjudicated in the action for possession.

From the Martin Circuit Court.

*A. J. Padgett* and *A. Paget*, for appellants.

*C. M. Mears*, Prosecuting Attorney, and *J. H. O'Neall*, for the State.

ELLIOTT, J.—In the information filed against the appellants these facts are stated : In 1887, William F. McDougal purchased at a commissioner's sale a tract of land in Daviess county. The sale was made pursuant to a decree of the Martin Circuit Court. After the purchase by McDougal he brought an action for the possession of the land purchased by him, and by change of venue, granted on the application of the defendants, the cause was removed to the court last named. The cause was tried at the February term, 1888, and a judgment was rendered in favor of McDougal. In March of the succeeding year, a writ was issued to the sheriff of Daviess county commanding him to put McDougal in possession of the land. Within a few days after the writ came into the hands of the sheriff he notified the defendants that the writ had been delivered to him, and that they had better seek a place to reside. On the 26th day of March, 1889, the sheriff formally demanded possession, the defendants asked for further time, they repeated this request and they were finally granted until the 6th day of April, 1889. On that day Hiram L. Hawkins and Laura Hawkins, defendants in the action of ejectment and appellants in this cause, took out letters of guardianship for five persons who were under the age of twenty-one years. After obtaining

the letters of guardianship the appellants conveyed the land to their wards, and thereafter assumed to hold possession of it as the guardian of those infants.   On the 10th day of April the sheriff, by his deputies, undertook to execute the writ and did remove some of the household goods.   While engaged in removing the goods Hiram L. Hawkins instituted a prosecution against the deputies of the sheriff for malicious trespass and procured their arrest on that charge. While the deputies were under arrest the appellants replaced the goods in the house from which they had been removed, and upon the return of the deputies, who had been released from arrest on giving bonds, the appellants, with others whom they had summoned to their assistance, resisted the officers with clubs and other weapons, and barricaded the doors so as to prevent an entrance.

The Martin Circuit Court undoubtedly had power to enforce obedience to its process and to punish for contempt those who resisted the officers charged with the execution of that process.   The fact that the land was situated in Daviess county, does not affect the jurisdiction of the court whose process was resisted.   The removal of the cause from the Daviess Circuit Court to the Martin Circuit Court vested the latter tribunal with plenary jurisdiction of the cause and all its incidents, and the former court had no longer any jurisdiction.   It was the process of the Martin Circuit Court that was resisted, and that court was the proper tribunal to punish those who were guilty of contempt in resisting its process and the officers charged with the duty of executing that process.

The Constitution vests the judicial power of the State, although the officers by whom that power is to be exercised may be chosen under laws enacted by the Legislature.   *Shugart* v. *Miles, ante,* p. 445 ; *State, ex rel.,* v. *Noble,* 118 Ind. 350.   The power of the courts necessarily comes from the Constitution, for, while it is true that the Legislature does possess powers in their nature judicial, it does not possess

purely judicial powers, that is, such powers as courts of justice exercise. As the Legislature possesses no purely judicial power it can delegate none, although it may, in accordance with the Constitution, create and designate judicial tribunals in which the power shall reside. When a court is created by the Legislature, under the Constitution, all the powers essential to the existence of the tribunal and the due exercise of its powers at once vest in it from the Constitution. Among the powers which vest in a constitutional court, such as our circuit courts, is that of maintaining its existence and dignity by punishing those who assume to treat it with contempt. This power, as has often been held, is an inherent one and exists independently of statute. *Little* v. *State*, 90 Ind. 338; *Holman* v. *State*, 105 Ind. 513; *Anderson* v. *Dunn*, 6 Wheat. 204; *Ex parte Robinson*, 19 Wall. 505; *Ex parte Terry*, 128 U. S. 289. The Legislature can not take from a constitutional court the power to punish for contempt, since that would make the judiciary subservient to the legislative department and violate the provision which secures the independence of the different departments of government. The Legislature may, within limits, regulate the procedure, but it can not by any regulation abridge or fetter the inherent power itself. The counsel for the appellants are, therefore, in error in assuming, as they do, that we must look solely to the statute to ascertain whether an act does or does not constitute a contempt. But if it should be conceded that the Legislature may define a contempt, the concession would avail the appellants nothing, for the Legislature has assumed to declare that resistance to an officer shall constitute a contempt. We do not, however, plant our conclusion upon the statute. We put the authority to punish a person who wrongfully resists the process of one of our circuit courts upon the high ground that it is an inherent power originating in the Constitution and by that instrument transmitted to the courts.

The trial court entered a rule requiring the appellants to

show cause why they should not be punished for contempt, and they responded to the rule by an answer. It was entirely proper for the court to inflict punishment without issuing an attachment, for the wrong-doers had vountarily appeared, and were in court. As they were in court upon a sufficient information, and in answer to a rule duly awarded, there was no reason for attaching them. The office of an attachment is to bring the offending parties into court. *State* v. *Matthews*, 37 N. H. 450; *Jackson* v. *Smith*, 5 Johns. 115. As the offenders were in court, no useful purpose could have been subserved by issuing an attachment, and the law does not require the performance of a fruitless act. Section 1013 of our statute is very loosely drawn, but it can not be interpreted as requiring that parties who are in court shall be attached, as well as punished. The statute must receive a reasonable construction, and regard must be had to the common law; and, giving these considerations proper weight, there is no difficulty in concluding that where the defendant has voluntarily appeared, and is before the court in answer to a rule, there is no necessity for issuing an attachment. But if we are wrong in our construction of the statute it would avail the appellants nothing, for they were parties to the action in which was rendered the judgment on which the process was issued, and the statute provides that "nothing herein contained shall be construed or held to embrace, limit, or control, any proceeding against any officer or party for contempt for the enforcement of civil rights and remedies." Section 1014, R. S. 1881.

No great strictness is required in the construction or form of a rule requiring a defendant to show cause why he should not be punished for contempt. In cases where an information is filed it is sufficient if the rule informs him, in a general way, of the nature of the charge preferred against him; for it is enough that the rule conveys such notice as will apprise him of the fact that a charge is pending against him, and put him upon inquiry. If he is put upon inquiry he is

chargeable with knowledge of all the facts which a reasonably diligent search would reveal to him.

The answers of the appellants do not purge their contempt in resisting the execution of the writ issued against them. The judgment that the plaintiff in the action of ejectment was entitled to possession was conclusive, and the defendants were bound to yield to the process issued upon that judgment. They can not, by resisting the execution of that process, raise any question adjudicated in the action for possession. Nor could the defendants, by assuming to sell their interest, after judgment had been given against them, put themselves in a position to resist the enforcement of the judgment by claiming through their own grantees. All who bought after the judgment, or, indeed, after the legal notice was given, were purchasers *pendente lite,* and must yield to the process issued on the judgment awarding possession to the plaintiff. This is elementary law. Sedgwick & Wait Trial of Title to Land, section 558; Freeman Executions, section 471.

Judgment affirmed.

Filed Oct. 31, 1890.