GRIMM, JR. *v.* STATE OF INDIANA.

[No. 29,694. Filed November 19, 1959.]

*Howard S. Grimm, Jr.*, of Auburn, *pro se.*

*Edwin K. Steers*, Attorney General, and *Frank E. Spencer*, Deputy Attorney General, for appellee.

PER CURIAM.—This appeal is from a judgment convicting appellant of a direct contempt of the Noble Circuit Court.

Appellant is an attorney who at the time of the alleged contempt was engaged in representing two defendants charged with motor vehicle offenses in the Noble Circuit Court.

The statement reduced to writing by the judge of said court was in substance that the court stated to the accused in Cause No. 5225 (who was represented by appellant), that the reason said accused's bond was being set was because he and his attorney (the appellant) had failed to appear on March 10, 1958, the second arraignment date of appellant in said cause. Appellant turned to his client and answered: "That is not so; I was present." He made that statement several times. He told his client at various times that the court would not enter a plea of not guilty for him. The court in turn stated this statement was a falsehood and he was holding appellant in direct contempt of court for charging the court with fraud, and gave appellant-attorney an opportunity to withdraw or apologize for making the statement. Appellant made no apology and he was thereupon charged with direct contempt. Upon his finding of guilty appellant was fined in the sum of $50.00 and sentenced to 10 days in jail.

Some days later appellant filed motion to reconsider[1] and motion for new trial, and the court before ruling on said motions modified the court's previous statement and finding so as to show for the first time that appellant's statements were made in a rude, insolent, and disrespectful manner. The trial judge stated the record containing the finding and judgment was being modified and clarified "in order to aid the Supreme Court in case

1. From the affidavits in the record it appears that appellant in stating he was in court on March 10, 1958, had erroneously confused the date with March 7, 1958, when he was present in said court.

of appeal." The court then overruled the motion to reconsider and the motion for new trial.

Appellant contends on this appeal that the decision of the court is not sustained by sufficient evidence and is contrary to law.

It is well settled in direct contempt proceedings that this Court will accept as true the statement entered of record by the lower court of the matter constituting the contempt, but will also examine the record, if necessary, to determine whether the acts alleged to be contemptuous do, in fact, constitute actions of contempt. *State ex rel. Stanton* v. *Murray; Stanton* v. *State* (1952), 231 Ind. 223, 108 N. E. 2d 251; *Blankenbaker* v. *State* (1929), 201 Ind. 142, 166 N. E. 265.

The underlying basis for proceedings in contempt was aptly stated by Lairy, C. J., in *Ray* v. *State* (1917), 186 Ind. 396, 404, 114 N. E. 866, 869, as follows:

> "[The right to punish for contempt] . . . is necessary to the preservation of order, to the enforcement of judgments, writs and orders, and therefore is essential to the due administration of justice. Fortunately, the occasion for the exercise of this power does not often arise, and it is seldom exercised by the courts except in extreme cases. So long as critics confine their criticism to facts and base them upon the decisions of the court they commit no contempt no matter how severe the criticism may be; but when they pass beyond that line and charge that judicial conduct was influenced by improper, corrupt or selfish motives, or that such conduct was affected by political prejudice or interest, the tendency is to poison the foundation of justice and create distrust, and destroy the confidence of the people in their courts. A feeling thus engendered would create dissatisfaction with all judicial determination; it would affect the standing and usefulness of the courts; it would seriously and dangerously affect the administration of jus-

tice. It is therefore sometimes necessary for courts to exercise their power to punish for contempt, not for the sake of the judges nor to vindicate them, but in order to maintain the standing, the respect, the dignity, and the usefulness of the courts through and by which justice is administered to the people."

However, it is of the utmost importance in a free society that the power to punish for contempt be not misused as in cases when it is utilized to protect the personal or individual feelings of a judge. As was stated in *Francis* v. *People of Virgin Islands,* 3 Cir. (1926), 11 F. 2d 860, 865 (Cert. den. 273 U. S. 693, 47 S. Ct. 91, 71 L. ed. 843), it is said:

"... In our jurisprudence the extraordinary action of contempt of court does not lie to heal the wounded sensibilities of a judge; it may be invoked only when the offending act impedes or disturbs the administration of justice. ..."

We are unable in the case before us to conclude that appellant's conviction of contempt of court can be sustained on the basis of the facts appearing in the trial court's statement and finding in this case. There was an obvious error on the part of appellant in his statement in open court to his client as to the date when he previously appeared in the cause and attempted to enter a plea of not guilty for his client, and we must accept the judge's statement that he was not in court on March 10, 1958. However, from the record it appears appellant was actually in court on March 7, 1958, and appellant contends he was mistaken three days as to the date of March 10.

The colloquy between the judge and appellant which is before us on this appeal indicates the remarks of

appellant complained of were addressed to his client rather than to the court. While we recognize that remarks of an attorney to his client might under the circumstances of the particular case be of a nature as to be contemptuous, we do not believe that in the instant case the conduct of appellant as borne out by the record was of such a character as to interfere with the respect, dignity and usefulness of the court as to constitute a contempt of court. In fact, the trial judge himself did not until some days after the alleged conduct took place, when considering the motion to reconsider and the motion for new trial, enter his finding that the conduct on the previous hearing was contemptuous, and thereupon modify and "clarify" his finding and judgment to such effect, and it is our view that appellant's conviction cannot stand upon such a state of the record.

The judgment of conviction is reversed with directions to sustain the motion for a new trial.

NOTE.—Reported in 162 N. E. 2d 454.