**Danny L. BRUMBAUGH, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 585S214.

Supreme Court of Indiana.

April 25, 1986.

Susan K. Carpenter, Public Defender, Kenneth M. Stroud, Sp. Asst., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Judge.

A jury trial resulted in appellant being found guilty of two counts of Attempted Murder and one count of Resisting Law Enforcement. He was sentenced for a period of thirty (30) years on each of the attempted murder charges and two (2) years on the charge of resisting law enforcement, all sentences to run concurrently.

The facts are: Prior to the events involved in this prosecution, appellant had been charged with assault and battery against his stepfather. On February 7, 1984, he was free on $1,000 bond on that charge; however, he took it upon himself to go to the Noble County Courtroom in Albion to discuss his case with the trial judge. During his discussion with the judge in the courtroom, appellant was informed that his bond would be raised from $1,000 to $10,000 and that he was to take a seat in the courtroom and await transportation to the jail by Deputy Sheriff Bloomfield.

After taking his seat as ordered by the judge, appellant suddenly arose and bolted from the courtroom. He ran to his parked vehicle and proceeded on State Road 9 at a high rate of speed. Deputy Bloomfield attempted to give chase but could not locate appellant. The deputy then contacted his dispatcher and advised him of the situation. Several police officers, including Indiana State Police helicopter pilot Barry Black and State Police officers Mark Hodges, Ted Knafel and Les Alligood, joined in the chase.

Officer Knafel knew appellant and knew that he lived in a nearby trailer park. He immediately drove to the park where he encountered appellant attempting to exit the park through its only drive. Officer Knafel was able to block appellant's way. Appellant then backed his car into a snowdrift where he abandoned it and proceeded on foot across a field carrying a shotgun loaded with deer slugs. The helicopter pilot used a loud speaker to demand that appellant place his weapon on the ground and surrender. Appellant raised the shotgun and fired it at the helicopter and the pilot.

Appellant also aimed and fired from a distance of approximately two hundred yards at Officer Mark Hodges. One of two shots fired at Hodges struck the snow within twelve feet of him. Officer Alligood was also twice fired upon, including one shot which "whizzed" by his head. Pursuit through snow-encrusted fields and woods ended with the surrender of appellant, who had one remaining slug in his shotgun.

Appellant now takes the position that his conviction was unlawful because he did not have the necessary *mens rea* to commit any of the charged crimes. He states he did not believe the judge could lawfully raise his bond in the manner attempted and that if he stayed in the courtroom he would be put in jail. Thus he simply left the courtroom. He argues that since he did not believe the judge had the right to make him remain in the courtroom or to put him in jail, he did not know that he was a fugitive. When it became apparent the police officers were after him he did not know that they had any legal authority to apprehend him, thus he could not have any intent to resist their arrest.

Contempt of court is disobedience to a court by acting in opposition to the court's authority, justice and dignity. It includes any act which pertains to a pending proceeding and which tends to deter the court from the performance of its duties. *State v. Shumaker* (1927), 200 Ind. 623, 157 N.E. 769. If appellant was not in contempt of court prior to the judge ordering him to be seated, he most certainly was in contempt of court when he disobeyed that order and bolted from the courtroom. Any person with a modicum of intelligence could expect a police officer to pursue him under the circumstances. The fact that appellant immediately rushed to his home and obtained a loaded shotgun is further evidence of his intent to thwart law enforcement authorities.

Appellant also attempts the excuse often used in an attempted murder charge

that he was such an expert in the use of firearms that he did not intend to kill those at whom he shot but only intended to frighten them. On the one hand he argues that the two hundred yard distance from which he shot at Officer Hodges was so great that the weapon would not be accurate. On the other hand he attempts to convince the Court that his expertise was so great that he could come within twelve feet of Hodges and still be under total control as to not be guilty of attempting to kill him. The jury was certainly within their province to believe the police officers when they each stated that they firmly believed appellant was attempting to kill them when he fired shots in their direction.

In one of the recent cases where this type of defense was attempted, this Court stated that "[d]ischarging the gun in the direction of Pedro is substantial evidence from which the jury could infer intent to kill, notwithstanding appellant's claim that he fired only to frighten him." *Rhine-hardt v. State* (1985), Ind., 477 N.E.2d 89, 93.

The entire confrontation was totally of appellant's making. He went to the county court uninvited in an attempt to confront the trial judge; he refused to obey the order of the trial judge in the courtroom; and he deliberately armed himself and fired indiscriminately at pursuing police officers. The evidence supporting the verdict of the jury is overwhelming.

The trial court is affirmed.

DeBRULER, PIVARNIK and SHEPARD, JJ., concur.

DICKSON, J., dissents without opinion.