**In the Matter of Contempt Proceeding Against Roger L. MILLER.**

**No. 12A02–9010–CV–628.**

Court of Appeals of Indiana, Second District.

Oct. 29, 1991.

Roger L. Miller, Miller & Martin Law Office, Frankfort, for Roger L. Miller.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for the state of Ind.

SULLIVAN, Judge.

Roger L. Miller, an attorney, appeals a ruling of the Clinton Circuit Court, finding him in contempt during the course of his representation of Abe R. Zell in a marriage dissolution proceeding. The court found that Miller misrepresented facts to the court by stating, first, that a delay in scheduling a "no contest" hearing would prejudice his client when no such prejudice existed, and second, in representing that there was no contest when in fact Mrs. Zell (Wife) claimed there was a contest regarding the distribution of certain property. The issues upon appeal are: 1) whether the trial court erred in finding Miller's assessment of prejudice to be a misstatement of fact, and 2) whether Miller knew or should have known that there was a contest when he filed for a "no contest" hearing.

We reverse.

At an uncontested dissolution hearing on September 24, 1990, Wife asserted that a dispute had arisen over a checking account, and therefore opposed an uncontested dissolution. Wife moved for an uncontested hearing on October 8, 1990, at which time she apparently anticipated that the dispute would be resolved.

Miller, on behalf of Mr. Zell, contended that Wife was merely delaying. He asserted that October 6 would be the tenth wedding anniversary of the couple, and that by delaying past the 6th, Wife would be entitled to draw from Zell's social security benefits. Miller pointed out that prior to the hearing, the matter of the disputed checking account had been resolved and that wife already had 99% of the proceeds. Thus, Miller concluded, there was no real contest.

The trial judge stated that he did not have time at the hearing to determine whether there was a contest or not. He told Miller to figure out whether the matter was truly uncontested, and warned him that "if I go as an uncontested matter and a contested matter comes up then I can hold you in contempt and I will." Record at 14–15.

Later the same day, Miller filed a motion for an uncontested hearing, in which he alleged:

"That there is no genuine issue in this matter and that a continuance beyond October 1, 1990, would be to the prejudice of Respondent/Counter–Petitioner herein." Record at 8.

Based on these representations, the trial judge set a hearing for October 4, 1990.

At the October 4 hearing, Wife again claimed that there were matters in contest. The judge demanded that Miller explain why he requested an uncontested hearing when there was a contest. In the course of responding, Miller explained:

"We showed him the checkbook. There was no other objection to that. The car,

she can have.... Now this morning [Wife's counsel] says, 'Well, give us the car and $2500.00.'" Record at 27.

Miller again took the position that Wife was stalling in order to draw on Zell's social security.

The judge then demanded that Miller explain the prejudice to his client which Miller, in his motion, stated would result from waiting until October 8. Miller asserted that his client did not want his wife to draw upon his social security benefits. Miller reasoned that such a draw could affect a second or subsequent wife's draw, although Zell did not presently have a second wife.

On the basis of this evidence, the trial judge found Miller in contempt and fined him $50.

■ The trial judge did not state whether he found Miller in direct or indirect contempt; however, the summary procedure employed by the court indicates that the judge intended to find Miller in direct contempt.[1] *See* I.C. 34–4–7–7 to –8 (Burns Code Ed.1986). In reviewing direct contempt proceedings, we accept as true the statement entered of record by the lower court of the matter constituting contempt, and interfere with the judgment only where it clearly appears that the alleged acts are not contemptuous. *In re Caito* (1984) Ind., 459 N.E.2d 1179, 1182.

The Indiana contempt statute is silent as to whether misrepresentations in pleadings justify a finding of contempt, either direct or indirect. I.C. 34–4–7–1 *et seq.* (Burns Code 1986) Our Supreme Court has not ruled upon this precise issue; however, it has stated:

"We are greatly disturbed by what appears to be a growing tendency among a number of lawyers to be careless, if not deliberately misleading, in their representations to the Court through their briefs. Recognizing the requirement that a lawyer represent his client zealously he, nevertheless, is required to remain within the bounds of law and ethical consider-

ations. Clearly a deliberate misleading of the Court upon factual matters is misconduct demanding severe disciplinary action." *Loza v. State* (1975) 263 Ind. 124, 325 N.E.2d 173, 179.

Material misrepresentations of fact in pleadings submitted to the court are clearly unacceptable and subject a lawyer to discipline. *Rules of Professional Conduct*, Rule 3.3. On the other hand, it is unclear whether, under Indiana law, such submissions are also sufficient to justify a finding of contempt. We need not decide the issue, however, because the facts do not support the judge's finding that Miller knew or should have known that his representations were false.

■ The judge apparently believed that Miller misrepresented a fact when he asserted that his client would be prejudiced by a delay in scheduling the hearing. In any event, the judge found that Miller was unable to show prejudice when called upon to do so. Miller asserted that under the social security laws, any draw which the present Mrs. Zell took upon Zell's social security would adversely affect the rights of a potential, though not yet identified, future wife. Armed with this legal analysis, Miller asserted that Zell would be prejudiced by delaying the hearing until Wife could draw upon his social security.

The connection between the legal analysis of social security law and the resulting prejudice to Zell is somewhat remote. Nothing in the record suggests that Zell had any immediate prospects of re-marrying. It may appear, particularly in hindsight, that such "prejudice" is insufficient to support a request that the court schedule a special hearing on short notice.

On the other hand, the lawyer has a duty to zealously represent his client. *Loza* 325 N.E.2d at 179. *See also Rules of Professional Conduct*, Comment to Rule 1.7. The lawyer is thus entitled and expected to protect the interests of his client against potentially adverse consequences arising from the course of a representation. The future contingencies of Zell's family life,

---

1. The judge asked Miller to explain his apparently contemptuous conduct during the hearing. Not satisfied with Miller's explanation, the judge found him in contempt. Fifteen days later, the judge issued the contempt order, detailing his reasons for the contempt finding.

and for that matter, the social security law, are factors which Miller could appropriately consider in determining whether prejudice might result to Zell. Miller's assessment may have been colored by his advocacy, but it was based upon a legitimate view of his client's interests. Given Miller's analysis of the social security law and his speculative application of that law to Zell's situation, Miller's assertion of prejudice was more in the nature of a conclusion of law than a statement of fact. Such a statement, made in apparent good faith, may not form the basis of a finding of contempt.

■ The judge also held Miller accountable for asserting that there was no contest when, at the time of the hearing, there was a contest. To the best of Miller's knowledge, there was and could have been no contest. The only contest at the September 24 hearing involved the checking account. Miller had answered that objection at the time he submitted the pleading which represented that there was no contest. In fact, the "contest" arose the morning of the October 4 hearing when Wife's counsel suddenly demanded an extra $2500. The record reflects that the "contest" was occasioned by Wife's unilaterally and newly created issues in an apparent effort to delay and thereby gain access to Zell's social security account. Wife's counsel admitted at the September 24 hearing that delaying the final hearing until after October 5 would be a great benefit to his client. He even explicitly acknowledged Wife's motive to delay.

Wife's desire to delay settlement is simply not attributable to Miller. Even if Miller had reason to know that wife would attempt to delay, Miller cannot be held strictly liable for opposing counsel's change of position on the day of the hearing. To hold otherwise would place litigants wishing to resolve their disputes hostage to the opposing party who may hope to benefit from delay. Indiana recognizes a public policy in resolving disputes with a minimum of delay. *See Rules of Profes-*

*sional Conduct,* Comment to Rule 3.2.[2] At the time Miller represented to the court that there was no contest, there were no factual issues constituting a contest about which Miller knew or should have known. To the extent Miller could have foreseen that Wife might create a contest to delay the settlement, Miller reasonably could have believed that the judge would see through the facade and find that no contest existed. In any event, Miller was under no duty to acquiesce in Wife's delay tactics. As a matter of law, the record contains no evidence from which the trial judge could have concluded that Miller knew or should have known about a contest that Wife was going to present on the morning of the hearing in order to delay the final disposition of the matter.

The decision of the trial court is reversed with instructions to vacate the order of contempt.

SHIELDS and CONOVER, JJ., concur

---

**2.** "Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client."