Vance CURTIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 80A02–9304–CV–191.

Court of Appeals of Indiana,
Second District.

Dec. 14, 1993.

Jane Ruemmele, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

This case presents the issue of whether an attorney's failure to appear for a scheduled trial date is direct or indirect contempt.

## FACTS

Vance Curtis is the prosecutor in Tipton County, Indiana. On January 12, 1993, Curtis failed to appear for a trial which had been scheduled during a pre-trial conference in September, 1992. Defense counsel also failed to appear.

Neither attorney could be reached at his office. Thirty minutes after the trial was scheduled to begin, the trial court adjudged both attorneys in contempt, fined them each $500.00, and ordered them each to pay $25.00 to each witness who had appeared for trial and an additional $50.00 to one witness for lost wages for the day.

The trial court denied Curtis's petition to reconsider; Curtis appeals.

## DISCUSSION

Curtis argues the trial court erred in adjudging him in contempt of court without following the procedures for indirect contempt set forth in IC 34-4-7-8 to 34-4-8-1 (1988 & 1992 Supp.).

■ There are two types of contempt, direct and indirect. Direct contempt has been defined as:

> conduct directly interfering with court proceedings while court is in session, including creation of noise or confusion, disrespectful conduct and refusing to take the witness stand in a trial. It has been stated in the cases defining such contempt that such conduct must take place in or immediately adjacent to the courtroom and while court is in session, so that the judge has personal knowledge of such conduct in his official capacity.

*Broderick v. Denbo* (1980), Ind.App., 413 N.E.2d 948, 956 (quoting *LaGrange v. State* (1958), 238 Ind. 689, 699, 153 N.E.2d 593, 596); *see also* IC 34-4-7-1 & IC 34-4-7-2 (1988). The "extraordinary but narrowly limited power" of direct contempt is limited to those situations in which the conduct at issue "created 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished, demoralization of the court's authority will follow.'" *In re Marriage of Neiswinger* (1985), Ind., 477 N.E.2d 257, 261 (quoting *In re Oliver* (1948), 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682). In all other situations,

> due process of law ... requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

*Id.*

The issue in this case, whether an attorney's failure to appear for a scheduled trial date is direct or indirect contempt, is an issue of first impression in Indiana. However, the issue has been dealt with by other jurisdictions. The approach of the New Jersey Supreme Court in *In re Yengo* (1980), 84 N.J. 111, 417 A.2d 533, *cert. denied*, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981), is particularly instructive.

In *Yengo*, the court examined the distinctions between direct and indirect contempt, and noted that

> the majority view is that an attorney's unexcused absence is not contempt in the actual presence of the court. The rationale is that, although the absence or late arrival of an attorney can be perceived directly by the court, the conclusion that the absence is inexcusable requires reference to facts not immediately within the court's perception.

*Id.* at 124, 417 A.2d at 541.

> The *Yengo* court observed that the unexplained absence of an attorney from a courtroom is an enigma. It demands an explanation. Aside from the unlikely event of complete disappearance of an attorney, the absence will be followed ... by a subsequent appearance before the court. At that time, the court invariably will ask for an explanation from the attorney. Generally, the absence alone does not constitute contempt. An essential element of the offense is the inadequacy of the explanation. As Justice Traynor has written, "the absence of a valid excuse is an indispensable element of the contempt."

*Id.* at 124, 417 A.2d at 540 (citations omitted).

Because the mere failure of an attorney to appear in court does not constitute contempt, rather, it is the failure to appear coupled with an inadequate explanation for that failure that justifies a contempt citation, the *Yengo* court determined that "the mere unexplained absence of an attorney is a hybrid," and held that "[t]he characterization of the contempt as direct or indirect should be deferred until after the attorney has an opportunity to explain his absence." The court reasoned:

> strict compliance with the requirement of referring absent attorneys to another

judge may not be in the interests of the judiciary, attorneys, or the public. Time would be wasted needlessly if, after observing the absence of an attorney, a judge could not ask, "Where were you?" The answer to that question frequently will obviate the need for further proceedings.

*Id.* at 126, 417 A.2d at 542.

■■■ Therefore, the court asks the attorney who failed to appear for an explanation. If the explanation is adequate, obviously, there will be no contempt. However, if the attorney refuses to give an explanation, or offers an "insulting, frivolous, or clearly inadequate explanation," both the attorney's absence and his or her lack of an adequate reason for the absence occurs in the presence of the court, and the attorney may be cited summarily for direct contempt. *Id.*, 417 A.2d at 542. If the explanation given does not fall into one of the above categories, that is, if there is "some evidence of the adequacy of the explanation," the matter should be treated as an indirect contempt, and the attorney will be entitled to the procedural safeguards available in all indirect contempt cases. *Id.*, 417 A.2d at 542.

■■■ We find the hybrid approach to be fair and sensible, and to comport with the requirements of due process. Applying this approach to the instant case, Curtis was not given the opportunity to explain his absence to the court before he was found in contempt. However, he did explain in his verified petition to reconsider that it was his practice to review the court's calendar on a daily basis to determine what hearings and trials he had scheduled and that the trial in question had not appeared on that calendar. This expla-

nation is not clearly inadequate on its face; therefore, the trial court erred in finding Curtis in direct contempt. Curtis is entitled to a hearing with the full panoply of procedural safeguards provided by IC 34–4–8–1 and IC 34–4–7–8 before a determination may be made whether he is guilty of indirect contempt.[1]

Judgment reversed for further proceedings consistent with this opinion.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs in part and dissents in part, with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I agree that application of a hybrid approach is desirable with regard to contempt proceedings when an attorney fails to honor a scheduled court appearance date. However, the majority opinion should not be construed to state that the prosecutor's absence from the courtroom is not conduct so as to trigger the sanctions allowable for direct contempt. When one's presence at a particular place at a particular time is required by law, that person's non-presence is conduct. Furthermore, that conduct occurs within the courtroom.

The principal value which I derive from the *Yengo* hybrid approach requiring factual inquiry is that it is directed to the determination of whether the absence is or is not "inexcusable". It may be said as a general proposition that criminal contempt will not lie, whether direct or indirect, without an element of willfulness. *See In re Lemond* (1980) 274 Ind. 505, 413 N.E.2d 228; *Allison v. State ex rel. Allison* (1963) 243 Ind. 489, 187 N.E.2d 565; *Denny v. State ex inf. Brady* (1932) 203 Ind. 682, 182 N.E. 313.

---

1. IC 34–4–7–8 provides, in part:

In all cases of indirect contempts, the person charged therewith shall be entitled, before answering thereto, or being punished therefor, to have served upon him a rule of the court, against which the alleged contempt may be committed; which said rule shall clearly and distinctly set forth the facts which are alleged to constitute such contempt; and shall specify the time and place of such facts with such reasonable certainty, as to inform the defendant with the nature and circum-

stances of the charge against him; and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished for such contempt, which time the court shall, on proper showing, extend so as to give the defendant a reasonable and just opportunity to purge himself of such contempt.

Further, IC 34–4–8–1 provides for the appointment of a special judge to preside over the contempt proceedings in cases where indirect contempt is alleged.

Whether the absence of Curtis at the time and place in question was or was not willful could not be determined without a factual inquiry. Such an inquiry was not conducted and for that reason the contempt determination is subject to reversal.

In my estimation, however, nothing is to be gained by a remand for further proceedings. The matters of record clearly reflect that both attorneys of record relied upon the trial court's own calendar, which did not reflect the trial setting. Notwithstanding that the prosecutor may have had the trial setting noted upon his personal calendar, I would hold that as a matter of law he was entitled to rely upon the court's own calendar and that, therefore, as a matter of law, the willfulness required for a contempt conviction was not present.

If the facts in the case before us permitted differing inferences with respect to the matter of willfulness, I would be in agreement with the majority opinion to the extent that it holds that the alleged contemnor is entitled to a hearing and all other safeguards afforded by I.C. 34–4–8–1 (Burns Code Ed.Supp.1992) and I.C. 34–4–7–8 (Burns Code Ed.1986). ·

I would reverse and remand with instructions to vacate the conviction and the punishment imposed.