## In re the CONTEMPT HEARING OF Woodrow S. NASSER.

No. 11A04–9303–CR–115 [1].

Court of Appeals of Indiana, First District.

Jan. 31, 1994.

Rehearing Denied April 4, 1994.

---

1. This case was transferred to this office Novem-    ber 9, 1993 by direction of the Chief Judge.

Gerald H. McGlone, McGlone Law Offices, Terre Haute, for appellant.

Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for appellee.

ROBERTSON, Judge.

Woodrow S. Nasser appeals a finding of direct contempt against him and raises essentially one issue: whether the court's finding of direct contempt is sustained by the evidence and the trial court's findings. Nasser was attorney of record for Larry D. Bemis, who was in jail and unable to make bond while awaiting prosecution on child molesting charges. The Clay Circuit Court found Nasser to be in contempt of court for failing to appear for Bemis' jury trial. We affirm.

We note at the outset that Nasser was advised of the charges against him, had a reasonable opportunity to meet them by way of defense or explanation, had the right to be represented by counsel, and had a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The matter proceeded initially upon the filing of an affidavit for citation for indirect contempt of court pursuant to Ind.Code 34–4–7–3 by Judge Ernest Yelton, judge of the Clay Circuit Court. Subsequently, the State, by its prosecuting attorney, filed a motion to amend the charge to include an alternative count alleging direct contempt and the motion was granted without objection by Nasser. Special Judge Thomas Gray issued a rule to show cause and, following the hearing on the rule to show cause, entered specific findings of fact and a single conclusion of law,

namely, that Nasser's actions constituted a direct contempt of court.

Among other things, the court found that Nasser knew that the jury trial of Larry Bemis had been scheduled for October 19, 1992 but did not appear, and that Nasser "gave no satisfactory reason why he was not present except that he made various assumptions without information sufficient to back up those assumptions." These findings are indeed supported by the record.

The transcript of evidence shows that the trial of Larry Bemis was set at his initial hearing on August 18, 1992 for October 19, 1992; that Nasser filed an appearance for Bemis on September 1, 1992; and that he executed a certificate of service, averring that service of his appearance had been made by hand delivery upon John Kenley, the Prosecuting Attorney of Parke County on that date. The prosecuting attorney of Clay County, Jim Deal, never received an appearance or any other filings from Nasser. Nasser met with Bemis briefly in early September but did not discuss with Bemis the merits of his case.

On October 14, 1992, the Wednesday before trial, Judge Yelton directed Mr. Deal, the prosecuting attorney, to contact Nasser. It was at this point that Mr. Deal discerned that Nasser was the attorney of record for Larry Bemis. Mr. Deal learned from Nasser that Nasser was not prepared for trial because he had not requested nor received the State's documentation and that Nasser intended to request a continuance. Mr. Deal relayed this information to Judge Yelton.

When a written motion did not arrive in Friday's mail and Nasser had not contacted the court or the prosecuting attorney, both Judge Yelton and Mr. Deal prepared for the trial on Monday. The court called thirty jurors, rearranged the furniture in the courtroom, prepared jury instructions and organized materials for voir dire. The prosecutor contacted witnesses and prepared instructions and visual aids.

All participants, including jurors, appeared prepared for the trial on Monday morning, October 19, 1992. Clay County expended $343.00 in compensating the jurors who were

called for the trial. The matter was eventually continued because of Nasser's lack of preparation.

Judge Yelton did receive a motion for continuance, dated October 15, 1992, from Nasser in Monday's mail, which arrived at 9:41 a.m. Nasser was summoned from a bench trial in Parke County and appeared at 10:44 a.m. He admitted that he knew the trial had been scheduled for that morning but told the court that he believed the trial would be and had been continued. Nasser also admitted that he never contacted the court to determine whether the court had received his motion for continuance or intended to grant it. Nasser also testified that on October 14, 1992, when he talked with Mr. Deal, he knew that one of the two matters he had scheduled for that Monday would need to be continued; that he knew only Judge Yelton could grant him a continuance; that it had never been the practice of the court to keep him advised of the status of pending matters and that it was his obligation to keep himself so advised.

Nasser argues in this appeal that the conduct found by the court to be contemptuous and the evidence supporting those findings do not show Nasser to have been in direct contempt of court. The thrust of his argument is that he did nothing in the presence of the court to permit a finding of direct contempt. Nasser's argument is based upon a selective reading of I.C. 34–4–7–1, which provides in relevant part:

> Every person who shall, ... by talking, moving about, or by signs, or gestures, or in any other manner, in any court of record, while the same is open for the transaction of business, and engaged therein, create any noise or confusion therein, whereby the business and proceedings of said court shall be disturbed, shall be deemed to be guilty of a direct contempt of said court.

■ In direct contempt proceedings, the reviewing court will accept as true the statement entered of record by the lower court of the matter constituting the contempt, but will also examine the record, if necessary, to determine whether the acts alleged to be contemptuous do, in fact, constitute actions of contempt. *In re Caito* (1984), Ind., 459 N.E.2d 1179; *Grimm v. State* (1959), 240 Ind. 125, 127, 162 N.E.2d 454; *In the Matter of Miller* (1991), Ind.App., 580 N.E.2d 313, 315. The court's statement and the evidence reflects that Nasser, by his absence, created confusion and disrupted the proceedings of the court while the court was in session and open for the transaction of business. Nasser's conduct, that is, his failure to appear, constitutes direct contempt as it is defined by statute.

■ We observe, however, that it is the prerogative of the courts of this state and not the legislature to define that conduct which constitutes a contempt of court. *See La Grange v. State* (1958), 238 Ind. 689, 692, 153 N.E.2d 593; *State v. Shumaker* (1927), 200 Ind. 623, 644, 157 N.E. 769. Among the inherent powers of a court is that of maintaining its dignity, securing obedience to its process and rules, rebuking interference with the conduct of business and punishing unseemly behavior. *Id.* at 640. The statutory definition of direct contempt is not all-inclusive but merely a legislative recognition of the court's inherent power to cite and punish for contempt. *Id.* at 694; *Skolnick v. State* (1979), 180 Ind.App. 253, 388 N.E.2d 1156, 1162, *cert. denied,* 445 U.S. 906, 100 S.Ct. 1085, 63 L.Ed.2d 323. Nasser is therefore wrong in his assertion that we must look solely to the statute to ascertain whether an act does or does not constitute a contempt. *See Hawkins v. State* (1890), 125 Ind. 570, 573, 25 N.E. 818.

■ Contempt of court is disobedience to a court by action in opposition to the court's authority, justice and dignity. It includes any act which pertains to a pending proceeding and which tends to deter the court from the performance of its duties. *Brumbaugh v. State* (1986), Ind., 491 N.E.2d 983, 984.

■ Direct contempt has been deemed to be any act which manifests a disrespect for and defiance of a court. *Id.* It deals primarily with the maintenance of order and respect in the courtroom, *id.* at 1169, and is conduct the contemptuous nature of which is personally known and observed by the court and not made known by the testimony of others. *In re the Marriage of Neiswinger*

(1985), Ind., 477 N.E.2d 257, 261; *Andrews v. State* (1987), Ind.App., 505 N.E.2d 815, 830. In each instance, the misconduct is within the personal knowledge of the judge and directly applied or communicated to him in a manner different than to the general public. *La Grange,* 238 Ind. at 694, 153 N.E.2d 593. As to whether or not a contempt of court has been committed, it does not depend upon the alleged intention of the offending party, but on the act which he did. *Coons v. State* (1922), 191 Ind. 580, 591, 134 N.E. 194.

These indicia of direct contempt are all present in Nasser's case. Plainly, Nasser's conduct directly impeded the administration of justice, retarded the progress of all proceedings in the Clay Circuit Court, and affronted the dignity of the court. Nasser's client, Larry Bemis, who had already been in jail at least sixty days, was forced to return to jail and his trial delayed for better than forty days as a consequence of Nasser's erroneous assumptions. The Clay Circuit Court wasted at least one full day of judicial time when the calendar was full and other matters could have been commenced. Potential jurors, witnesses, police officers, and the prosecuting attorney all lost the better part of the morning because of Nasser's failure to appear.

■ Nasser also seems to argue that inaction cannot constitute a direct contempt. Although the failure of an officer of the court to perform some act required of him has typically been treated as indirect contempt, *see e.g. In the Matter of Toomey* (1989), Ind., 532 N.E.2d 608; *In the Matter of Cowen* (1989), Ind., 539 N.E.2d 24; *Howard v. Korte* (1990), Ind.App., 555 N.E.2d 166, none of these cases involved a contemptuous omission occurring during a jury trial. Nasser's misconduct directly interfered with court proceedings and could have brought the judicial system in disrepute. In our view, the court below properly characterized Nasser's failure to appear as a direct contempt. Nasser was given all the procedural protections entitled to one accused of indirect contempt and given a full opportunity to explain his conduct. Despite his explanation, Nasser's intent can be inferred from the nature of his conduct.

We observe that the procedure employed in this case fully comports with that approved by this court's second district in *Curtis v. State* (1993), Ind.App., 625 N.E.2d 496. The trial court gave Nasser two opportunities to explain his actions and his explanation was deemed to be inadequate. Moreover, as the *Curtis* court's concurring and dissenting opinion points out, when one's presence at a particular place at a particular time is required by law, the person's non-presence is conduct which occurs within the courtroom. *Curtis,* 625 N.E.2d at 498.

Nasser also finds fault with the trial court's findings, arguing that numerous facts were omitted from the findings. The trial court was not required to find the facts as Nasser portrays them; the findings which were made are more than adequate to sustain the judgment.

Judgment affirmed.

SHARPNACK, C.J., concurs.

MILLER, J., dissents with separate opinion.

MILLER, Judge, dissenting.

Since Nasser was not present in court when the alleged contempt occurred—nor does my examination of the record reveal the court was even in session (the judge was awaiting Nasser's arrival)—Nasser could not have committed *direct* criminal contempt. Thus, the judgment of guilt for direct contempt was not supported by the facts and evidence, was clearly erroneous, and should be reversed.

The dignity of a court depends upon the maintenance of decorum. The right of the court to protect its inherent right to function through its contempt power has a venerable history in Indiana, and our law with respect to that right is not complicated. When an individual disturbs accepted courtroom protocol, he or she faces punishment for contempt. While the majority has noted several definitions of contempt, I find the explanation of direct and indirect contempt given by our supreme court in *Ex Parte Wright* (1879), 65 Ind. 504 to be clearly instructive:

A contempt of court is either direct or constructive [indirect]. . . . A direct contempt is an open insult, in the face of the court, to the person of the judges while presiding, or a resistance to its powers in their presence. A constructive [indirect] contempt is an act done, not in the presence of the court, but at a distance, which resists their authority, as disobedience to process, or an order of the court, such as tends in its operation to obstruct, interrupt, prevent or embarrass the administration of justice.

*Id.* at 508.

When the disruptive activity constitutes direct contempt of court, no formal charges are filed and no evidentiary hearing is held. Ind.Code 34-4-7-7. Rather, citation and punishment for direct contempt is an entirely summary process; the offense may be punished immediately upon its occurrence, without further proof or explanation beyond what is known to the presiding judge by his senses. *Skolnick v. State* (1979), 180 Ind. App. 253, 388 N.E.2d 1156, 1170, *cert. denied.* Conversely, when the disruptive activity constitutes indirect contempt, the accused is entitled to a panoply of constitutional procedural due process, including notice and an opportunity to be heard. *See* Ind.Code 34-4-7-8 and Ind.Code 34-4-7-9.

Given the above definition of direct contempt, I fail to see how Nasser's failure to appear in court, or non-presence, constitutes an action taken in the presence of the court.

Indeed, the majority of state and federal courts that have addressed this question have found similarly errant attorneys' actions to constitute indirect contempt. Generally, these courts reason that while an attorney's absence is within the personal knowledge of the court, the reason for the absence is not, and, therefore, the due process requirements of indirect contempt attach. *See* 13 A.L.R.4th 122, § 10 (1982).

Moreover, while the New Jersey procedure, adopted by the majority in *Curtis v. State*, Ind.App., 625 N.E.2d 496, for determining whether an attorney is in direct or indirect contempt for failing to appear in court, is innovative, it is not the law in Indiana. In short, the New Jersey procedure provides that when an attorney fails to appear in court, he or she is given an opportunity to explain the absence at a later, apparently perchance, appearance before the court.[1] If the explanation given is reasonable, citation for contempt will not follow. However, if the attorney refuses to give an explanation or the explanation given is inadequate or insulting to the court, the attorney may be summarily cited for direct contempt. On the other hand, if the explanation is of questionable adequacy, the matter will be treated as indirect, and will be accompanied by due process safeguards. *Curtis* at 498.

I fail to see why Indiana's contempt procedure is insufficient for determining the fate of an attorney who fails to appear in court.[2]

1. The *Curtis* court adopted the New Jersey "hybrid" approach from *In re Yengo* (1980), 84 N.J. 111, 417 A.2d 533, *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110, where, in describing this initial step in the contempt procedure, the New Jersey Supreme Court stated:

> Aside from the unlikely event of complete disappearance of an attorney, the absence will be followed . . . by a subsequent appearance before the court. At that time the court invariably will ask for an explanation from the attorney. Generally the absence alone does not constitute contempt. An essential element of the offense is the inadequacy of the explanation.

Judge Shields elaborated no further on the procedural formality, or lack thereof, of this essentially "preliminary" (or possibly surprise) hearing for which no mention is made of a requirement for notice to be given the accused. Depending upon the individual circumstances of each case, it is entirely possible that days, weeks,

or even months may go by before the attorney will have reason to appear again, or perhaps the attorney will never have reason to appear before the court again. Thus, I seriously question the practicality, as well as the apparent lack of formal procedural due process, of this initial procedure.

2. For an example of one procedure employed for finding an attorney in contempt of court, see *In re the Matter of Stanley Jablonski* (1992), Ind. App. 590 N.E.2d 598. While the issue presented in *Jablonski* is not relevant here, the factual scenario is similar and instructive. After Jablonski, a public defender, failed to appear three times on behalf of a criminal defendant, the judge requested the county prosecutor to proceed with indirect criminal contempt charges. After conducting an investigation, the prosecutor declined to file the charges because he found that Jablonski's absence was not based on intentional disobedience, but upon an apparent lack of com-

However, it appears to me that even under the New Jersey "hybrid" approach, the procedure afforded Nasser is indicative of that of indirect contempt, and seems to support my position that his non-presence in court might have constituted indirect, rather than direct contempt of court. Specifically, Nasser was afforded an opportunity to explain his absence at a "preliminary" hearing the day of the occurrence. Judge Yelton apparently found his explanation to be inadequate, and thereafter issued an affidavit citing Nasser for indirect contempt. Later, Nasser was afforded notice and an opportunity to be heard at a formal hearing. Nothing about the procedure employed was summary in nature.

In summary, Nasser was charged with an offense which was impossible to prove because his actions did not take place in the court's presence. That, however, is the state's problem.[3] Since the Special Judge entered no judgment with respect to the indirect criminal contempt charge, Nasser was not found guilty of any other offense. The case should be reversed and Nasser discharged.

---

munication on the part of the court staff. The procedure employed in *Jablonski* is logical and comports with that prescribed by Indiana law. Thus, I see no need for Indiana to embrace the "manufactured" hybrid procedure adopted in *Curtis*, particularly the perchance "preliminary" hearing.

3. The record reveals that Nasser did not object to the filing of the direct criminal contempt charge. That does not mean, however, that he waived the state's duty to prove the direct contempt charge against him.